# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| KELLOGG BROWN & ROOT | § | |
| SERVICES, INC; BROWN & ROOT | § | |
| SERVICES, a division of KELLOGG | § | |
| BROWN & ROOT SERVICES, INC.; and | § | |
| KELLOGG BROWN & ROOT | § | |
| INTERNATIONAL, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-2684 |
| | § | |
| ALTANMIA COMMERCIAL | § | |
| MARKETING CO. W.L.L., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Kellogg Brown & Root Services, Inc., Brown & Root Services, a division of Kellogg Brown & Root Services, Inc., and Kellogg Brown & Root International, Inc. (together, "KBR") have sued Altanmia Commercial Marketing Co. W.L.L. ("Altanmia").  KBR and Altanmia are currently in contractually agreed arbitration (the "Arbitration") to resolve disputes over two subcontracts, Subcontract S0138 and Subcontract S00164.  KBR seeks a temporary and permanent injunction prohibiting Altanmia from asserting claims under a third subcontract, Subcontract S0040, in the Arbitration.  KBR also seeks to enjoin Altanmia from submitting any documents related to Subcontract S0040 in the Arbitration.  KBR finally asks for a declaratory judgment that the parties did not agree to include claims under Subcontract

S0040 in the Arbitration and that Altanmia may not assert claims under or submit documents relating to Subcontract S0040 in the Arbitration.  (Docket Entry No. 1).

Following a hearing, this court requested supplemental briefing on whether the arbitrator may use evidence relating to nonarbitrable claims in deciding claims that are submitted for arbitration and to what extent the arbitrator's findings and conclusions as to the nonarbitrable claims have preclusive effect in deciding the arbitrable claims.  KBR filed a supplemental brief.  (Docket Entry No. 7).  Altanmia responded, (Docket Entry No. 13), and KBR replied, (Docket Entry No. 18).

Altanmia also filed a motion to dismiss KBR's claims on the grounds that they are not ripe, that KBR is improperly asking this court to issue an advisory opinion, and that KBR has failed to join the arbitrator who is asserted to be an indispensable party.  (Docket Entry No. 11).  In addition, Altanmia moved to dismiss Kellogg Brown & Root Services, Inc. ("KBRSI") for lack of standing.  (*Id.*)  KBR has responded to these motions.  (Docket Entry No. 27).  Altanmia has also moved to stay the litigation pending service of process.  (Docket Entry No. 19).  KBR has responded to this motion.  (Docket Entry No. 25)

Based on the pleadings; the motions, responses, and replies; the parties' submissions; and the applicable law, this court grants in part and denies in part KBR's application for a preliminary injunction.  Specifically, the court grants KBR's request for a preliminary injunction preventing Altanmia from asserting claims under Subcontract S0040 for resolution in the pending Arbitration of claims under Subcontracts S0138 and S00164.  This court denies KBR's request for an injunction preventing Altanmia from submitting documents in

the pending arbitration leaving it to the arbitrator to decide what documents are relevant and admissible in that forum.  This court also grants in part and denies in part Altanmia's motion to dismiss and denies Altanmia's motion to stay this litigation.  KBR must submit a proposed preliminary injunction to this court no later than **December 7, 2007**.  The reasons for these rulings are set out in detail below.

## I.      Background

In 2003, the United States Army Corps of Engineers (USACE) awarded KBR a contract to transport fuel from Kuwait into Iraq in connection with the USACE's "Restore Iraqi Oil" program.  KBR entered into a series of subcontracts with Altanmia to provide the necessary fuel transportation services, including Subcontracts S0040, S0138, and S00164.

Subcontracts S0138 and S00164, respectively dated October 28, 2003 and November 5, 2003, involved the rental of benzene and kerosene tanker trailers.  Both documents stated that any disputes "arising under or related to" these Subcontracts would be resolved in "binding arbitration in accordance with the rules, regulations, and procedures of the American Arbitration Association."  (Docket Entry No. 13, Ex. C at 003423, Ex. D at 003284).  Subcontract S0040, dated May 18, 2003, involved the rental of fuel tankers.  It stated that if any dispute could not be resolved through negotiation, the parties would "attempt in good faith to resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures."  (Docket Entry No. 13, Ex. A at § 8.2).  Subcontract S0040 further stated:

> The parties desire to resolve any disputes arising out of this

3

> Subcontract amicably and without litigation . . . .  Accordingly, [Altanmia] agrees that the filing of a claim [with Brown & Root Services's project manager] within the time prescribed and the pursuit of the procedures outlined above in a timely manner shall be a prerequisite to the filing of any litigation against [Brown & Root Services], Owner or Engineer, and that the failure to do so shall constitute a waiver of any legal rights with respect to the subject matter of the claim.

(Docket Entry No. 13, Ex. A at § 8.2)

On May 9, 2007, Altanmia sued KBR in federal court, asserting breach of contract and promissory estoppel claims under a "Subcontract."[1]  On the same date, Altanmia initiated arbitration to resolve disputes regarding "Subcontracts effective October 23, 2003 and November 5, 2003."  (Docket Entry No. 13, Ex. E at 1).[2]  On July 30, 2007, the arbitrator, Professor Martin Hunter, sent the parties draft Procedural Order No. 1 ("Procedural Order"). Among other things, the Procedural Order directed Altanmia to produce "copies of the documents on which it relies" by August 10, 2007.

On August 6, 2007, Altanmia dismissed without prejudice its lawsuit against KBR without having served KBR with process.  On August 10, 2007, Altanmia served KBR with

---

[1] *Altanmia Commercial Mktg. Co. W.L.L. v. Kellogg Brown & Root Servs. et al.*, No. H-07-1560.  The complaint does not specify which KBR–Altanmia subcontract was in dispute.  KBR asserts that Altanmia sued over claims arising under Subcontract S0040.  (Docket Entry No. 1 at 3). In the complaint, Altanmia asserted claims totaling over $3.5 million.

[2] Although Altanmia's Notice of Arbitration and Statement of Claim asserts claims under "Subcontracts effective October 23, 2003 and November 5, 2003," (Docket Entry No. 13, Ex. E), the parties' briefs identify Subcontracts S0138, dated October 28, 2003, and S00164, dated November 5, 2003. (Docket Entry No. 13, Exs. C, D).  The parties have stipulated that Altanmia's Statement of Claim contained a typographical error and that the Statement of Claim concerns Subcontracts S0138 and S00164.  (Docket Entry Nos. 21, 22).

copies of documents pursuant to Professor Hunter's Procedural Order.   Altanmia's production included documents related to 53 claims under Subcontract S0040 for compensation for the loss of tractor heads and tanks.  According to KBR, these claims exceed $3 million.  (Docket Entry No. 1).

After reviewing the documents, KBR's counsel wrote to Altanmia's counsel on August 13, 2007 to ask whether Altanmia intended to include claims under Subcontract S0040 in the Arbitration.  KBR's counsel asked Altanmia to withdraw from the Arbitration all documents related to claims under Subcontract S0040.  According to KBR, Altanmia's counsel responded that there was "no inadvertent production."  (Docket Entry No. 1). Altanmia has not withdrawn the documents.

In this suit, KBR seeks to enjoin Altanmia from submitting claims under Subcontract S0040 and from submitting documents related to Subcontract S0040 in the Arbitration of the disputed claims under Subcontracts S0138 and S00164.  KBR also seeks a declaratory judgment that the parties did not agree to arbitrate claims arising under Subcontract S0040, that Altanmia may not assert claims under Subcontract S0040 in the Arbitration, that Altanmia may not submit documents related to Subcontract S0040 in the Arbitration, and that KBR is not obligated to compensate Altanmia for losses or damages that Altanmia sustained in performing its duties under Subcontract S0040.  (Docket Entry No. 1).

In response, Altanmia argued that its production was proper based on the broad language of Professor Hunter's Procedural Order.  Altanmia argued that it "is not attempting to arbitrate its vehicle claims under Subcontract S0040 in the Arbitration" and asserted that

KBR has failed to satisfy the requirements necessary for a preliminary injunction.  (Docket Entry No. 13 at 5).  Altanmia has also moved to dismiss KBR's claims for lack of ripeness, lack of standing, requesting an impermissible advisory opinion, and failing to join Professor Hunter as an indispensable party.  In addition, Altanmia has moved to stay the litigation pending service.

## II.     The Legal Standard

### A.     The Motion to Dismiss Standard

#### 1.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).  The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981).  When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial

authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997).

### 2.   Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b) (6). The Supreme Court recently clarified the standards that apply in a motion to dismiss for failure to state a claim. In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974; *see also Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

When a plaintiff's complaint is dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear

that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied leave to amend a complaint if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see also Great Plains Trust Co.*, 313 F.3d at 329; *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1996).

### 3.      Rule 12(b)(7)

Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19."  "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined."  *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir.2003) (footnotes omitted).  A court must first determine if a person should be joined to the lawsuit under Rule 19(a).  If so, joinder should result.  But if such joinder would destroy the court's jurisdiction, the court must determine under Rule 19(b) if the party is indispensable.  If the party is indispensable, then the court must dismiss the litigation.  If the party is not indispensable, the case may continue without joinder.  *Id.* Rule 19(b) lists four factors to be considered: (1) the extent to which proceeding without the absent party would prejudice either the absent party or the parties to the lawsuit; (2) whether a judgment can be structured with protective provisions which would lessen the potential prejudice; (3) whether a judgment in the absence of the necessary party will be adequate; and

(4) whether the plaintiff has an adequate remedy if the lawsuit is dismissed.

### B.      The Temporary Injunction Standard

To obtain a temporary restraining order or preliminary injunction, the applicant must show: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the other; and (4) that granting the preliminary injunction will not disserve the public interest. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citing *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003)).  A preliminary injunction "is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion' on all four requirements." *Id.* (internal quotations and citations omitted).

## III.   Analysis

### A.      Altanmia's Motion to Stay the Litigation Pending Service of Process

Altanmia argues that "[s]ervice of process is a constitutional requirement without which Altanmia is not properly before this court."  (Docket Entry No. 19 at 1).  Altanmia cites the briefing schedule this court set for KBR's application for injunctive relief.  Altanmia asserts that because KBR had not properly effected service, Altanmia faced two choices—"either ignore the Court's order to submit additional briefing, thus risking the possibility of having an injunction entered against it (and running afoul of the Court's directives), or submitting its brief and responding directly to the merits of KBR's claim prior to being served, without the opportunity to assert the defenses afforded by Rule 12." (*Id.* at

15).  Altanmia also focuses on KBR's reply brief, (Docket Entry No. 18), arguing that "[n]either this Court's local Rules nor its Local Courtroom Procedures permit the filing of reply briefs."  (Docket Entry No. 19 at 15).  Altanmia argues that KBR's brief and its letters to this court raise "new arguments not previously asserted" and "present the Court with substantive arguments on the merits of KBR's claim for declaratory relief," forcing Altanmia "to respond to the merits of these arguments prior to service and discovery."  (*Id.* at 15). Altanmia contends that the litigation should be stayed until KBR serves Altanmia with process under Rule 4 of the Federal Rules of Civil Procedure.

KBR responds that Altanmia cannot object based on personal jurisdiction.  Pointing out that Altanmia sued KBR in the Southern District of Texas on May 9, 2007 to assert claims under Subcontract S0040, KBR argues that Altanmia has "purposefully availed itself of the benefits and protections of this very forum" and has consequently "waived any objection to this Court's *in personam* jurisdiction in this action."  (Docket Entry No. 25 at 5).  In addition, KBR contends that Altanmia waived its right to object on the basis of personal jurisdiction because it failed to assert such an objection in its initial Rule 12 motion to dismiss and waived service of process because it voluntarily appeared.  Citing *In re Connaway*, 178 U.S. 421, 428 (1900), KBR asserts that "[t]he long established rule is that 'the voluntary appearance of a party is equivalent to personal service of the summons and copy of the complaint upon him.'"  (*Id.* at 8).  KBR contends that under the Fifth Circuit's broad interpretation of "appearance," Altanmia has engaged in a number of both formal and informal acts that qualify as a voluntary appearance, including asking this court for dismissal

or abatement of this action.  (*Id.* at 9).

Federal Rule of Civil Procedure 12(b) provides in relevant part:

> (b)  How Presented. Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
>  . . .
> (2)  lack of jurisdiction over the person,
>  . . .
> (4)  insufficiency of process,
> (5) insufficiency of service of process . . .

> (g)  Consolidation of Defenses in Motion. A party who makes a motion under this rule may join with it any other motions then available to the party.  If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted . . .

> (h)  Waiver or Preservation of Certain Defenses

> > (1)  A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived . . . (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

If a party does not object to service of process in a Rule 12(b) motion, the party must raise the objections in its responsive pleading.  *Golden v. Cox Furniture Mfg. Co., Inc.*, 683 F.2d 115 (5th Cir. 1982).  A pleading is "responsive" under Rule 12 if it is the first pleading filed after the claim for relief is made.  *T&R Enters., Inc. v. Continental Grain Co.*, 613 F.2d 1272, 1277 (5th Cir. 1980).  If the party fails to object to service of process in either a Rule

12(b) motion or its first responsive pleading, "[t]he penalty for failing to raise any of these defenses at this point is waiver." *Golden*, 683 F.2d at 118 (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1391, at 853 (1969)).  Rule 12(h)(1) "advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. If he wishes to raise any of these defenses he must do so at the time he makes his first significant defensive move." *Id.*  "A party named in the complaint may voluntarily submit to the jurisdiction of the court.  Under Federal Rule of Civil Procedure 12(h)(1) any jurisdictional defect stemming from insufficiency of process or of service of process is waived unless it is raised in the answer or by motion before the filing of a responsive pleading." *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir. 1985).

Before filing its motion to stay litigation pending service of process on September 5, 2007, Altanmia filed a brief in opposition to KBR's application for injunctive relief and moved to dismiss KBR's claims for lack of ripeness, lack of standing, requesting an impermissible advisory opinion, and failure to join Professor Hunter as an indispensable party on August 28, 2007.  Altanmia failed to object to insufficiency of service of process in this filing.

Some courts have found that a request to stay proceedings is not a defense that falls within Rule 12's requirement that the defendant plead all available defenses or risk waiving them.  *See, e.g.*, *Warren Bros. Co. v. Cardi Corp.*, 471 F.2d 1304 (1st Cir. 1973) (motion to stay based on pending arbitration); *Intravascular Research Ltd. v. Endosonics Corp.*, 994 F.Supp.564, 567 n.3 (D.Del. 1998) (motion to stay based on *Colorado River* abstention);

*Parker v. Transcontinental & Western Air*, 4 F.R.D. 325, 326 (W.D.Mo. 1944) (motion to stay based on request for more definite statement).  However, these courts did not address a motion to stay proceedings due to an objection, such as insufficiency of service of process, encompassed by the Rule 12(b) defenses.  In its emergency motion to stay, Altanmia asserts that because KBR has not served it with process, it is "not properly before the Court," (Docket Entry No. 19 at 2), and that as a result, "the Court lacks personal jurisdiction over it," (*Id.* at 14).  These assertions raise objections under Rule 12(b).  The objections are subject to the Rule 12 provision that "[a] defense of lack of jurisdiction over the person, . . . insufficiency of process, or insufficiency of service of process is waived . . . if it is neither made by a motion under this rule nor included in a responsive pleading."  FED R. CIV. PRO. 12(h)(1).  Because Altanmia failed to object to service of process or lack of personal jurisdiction in both its Rule 12 motion and its initial responsive pleading, Altanmia has waived those objections.  *See Giannakos*, 762 F.2d at 1298.

Altanmia asserts that it either had to ignore this court's order or respond to KBR's supplemental briefing and forgo its Rule 12 defenses.  But Rule 12 allows a defendant to assert defenses based on lack of personal jurisdiction and insufficiency of service in either the defendant's Rule 12 motion or responsive pleading.  Altanmia filed its response brief and its Rule 12 motion to dismiss on the same day.  Altanmia did not include objections to lack of personal jurisdiction and insufficiency of service of process in either filing.  Under the Rules, Altanmia has waived those objections.  "The Federal Rules do not in any way suggest that a defendant may halfway appear in a case, giving plaintiff and the court the impression

that he has been served, and, at the appropriate time, pull failure of service out of the hat like a rabbit." *Broadcast Music, Inc. v. M.T.S. Enters., Inc.*, 811 F.2d 278, 281 (5th Cir. 1987).

Altanmia asserts that it "reserved its right to assert jurisdictional defenses and defenses based on ineffective service of process pursuant to Federal Rules of Civil Procedure 12." (Docket Entry No. 19 at 14 n.48). Altanmia contends that it "refrained from moving to dismiss this matter due to lack of service when it filed its Motion to Dismiss, because Altanmia assumed that given the purported urgency of KBR's request for injunctive relief and its repeated substantive arguments to the Court (in both letters and briefs), that KBR would make some effort to obtain service upon Altanmia." (Docket Entry No. 19 at 14 n.48). Rule 12 neither requires nor encourages such an assumption. Despite Altanmia's insistence that it "continues to reserve its right to assert a defense based on lack of service of process," (*id.*), Rule 12 requires such a defense to be made in a responsive pleading on in the defendant's first Rule 12 motion to dismiss. *See* 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1391 (2002). Altanmia cites no cases in which courts have allowed a defendant to preserve jurisdictional and service of process defenses beyond the defendant's first responsive pleading. Under Rule 12, such objections must be raised in a defendant's first Rule 12(b) motion or responsive pleading. *See Central Laborers' Pension, Welfare and Annuity Funds v. Griffee*, 198 F.3d 642, 644 (7th Cir. 1999) ("A judgment is void if the court issuing it does not have jurisdiction over the defendant, and it does not if the defendant is not served, unless he waives service *or makes an appearance in the case without reserving an objection to jurisdiction*.") (internal citations omitted; emphasis added); *accord Vasquez v.*

14

*Kitsap County*, No. 05-5359, 2006 WL 1348387, at *2 ("Kitsap Transit filed a limited Notice of Appearance on August 19, 2005 [in response to the summons and complaint it received] in which it expressly preserved its defenses to personal jurisdiction, insufficiency of process and insufficiency of service of process."); *Raines v. Antonio*, No. CIV.A. 00-3314-CM, 2005 WL 2219330, at *1 (D.Kan. Sept. 13, 2005) ("An answer to plaintiff's complaint was filed on defendant Antonio's behalf on March 6, 2001, which preserved insufficiency of service of process as a defense."); *U.S. v. Marunaka Maru No. 88*, 559 F.Supp. 1365, 1371 (D.Alaska 1983) ("A restricted appearance does not preserve jurisdictional defenses to the original claims that prompted claimant's appearance.  Such defenses are properly raised by motion or responsive pleading.").  Altanmia has waived its objections to lack of personal jurisdiction and insufficiency of service of process because it failed to raise those objections in its initial Rule 12 motion to dismiss.

Altanmia not only filed a motion to dismiss KBR's claims, it responded to KBR's supplemental briefing.  Altanmia argues that because of KBR's failure to serve process, Altanmia was forced to respond to KBR's substantive arguments, including "new arguments not previously asserted" in KBR's reply brief, "prior to service and discovery."  (*Id.* at 15).  However, the purpose of Rule 4 and service of process is only to ensure that "all defendants . . . no matter where they might be located, notice of the commencement of the action."  4 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1961, 312 (2002).  There is no indication that Altanmia was unaware of KBR's suit.  *See Broadcast Music*, 811 F.2d at 281.  In addition, KBR's reply brief does not raise new arguments that, combined with the lack of

15

service of process, prejudice Altanmia in this lawsuit.  Rather, KBR's reply responds to

contentions that Altanmia made in its response and reiterates arguments that KBR asserted

in its original complaint.  The purpose of service of process is not to protect defendants from

having to address the merits of a case before discovery, as Altanmia suggests.

Altanmia's motion to stay this litigation pending service of process is denied.

### B.      Altanmia's Rule 12(b)(1) Motion to Dismiss for Lack of Ripeness

Altanmia argues that KBR's complaint should be dismissed for lack of subject-matter

jurisdiction because KBR's claims relating to Altanmia's production of documents are not

ripe.  Arguing that further factual development of what rules the arbitrator will use in the

Arbitration is necessary, Altanmia asserts that no actual controversy currently exists.

Altanmia further contends that KBR should not be permitted to assert a claim for relief until

the arbitrator issues a preliminary or final decision, because "KBR is seeking relief to stop

an action that is purely speculative."  (Docket Entry No. 11 at 9).  Altanmia argues that a

whole host of contingencies must occur before a case or controversy would develop,

including "whether Altanmia will use the produced documents at the hearing, whether KBR

would object to the introduction of documents when and if designated as exhibits, how the

Tribunal would evaluate any objection should any document of which KBR now complains

should be selected as exhibits and KBR object . . . ."  (*Id.*).  Altanmia stresses that it "has

made no claim to the Tribunal requesting damages under Subcontract S0040 or any

determination regarding the interpretation or applicability of Subcontract S0040." (*Id.* at 10).

Similarly, Altanmia argues that KBR cannot show "any valid impact it would suffer as a

result of Altanmia's production of documents relating to Subcontract S0040." In addition, Altanmia argues that litigation over its production of Subcontract S0040 documentation would delay and impede the arbitration process by impermissibly usurping the arbitrator's authority to consider the admissibility of evidence in his forum and to rule on "matters associated with Altanmia's pursuit of dispute resolution of Subcontracts S00164 and S00138." (*Id.* at 11). Lastly, Altanmia contends that because KBR lacks standing, any opinion this court would issue would be advisory.

In response, KBR argues that "[t]he threat of litigation, if specific and concrete, can establish a justiciable controversy upon which declaratory judgment can be based." (Docket Entry No. 27 at 9). KBR stresses that Altanmia has not only threatened to sue KBR over Subcontract S0040; it filed that suit, then dismissed it without prejudice. After the dismissal, Altanmia submitted documents relating to its claims under Subcontract S0040 in the Arbitration. KBR argues that "[t]hese acts, combined with (i) Altanmia's repeated refusals to formally agree that it will not seek to arbitrate claims under Subcontract S0040, and (ii) Altanmia's repeated position that claims subject to Subcontract S0040 are in fact, subject to arbitration," demonstrates that KBR faces a real and immediate threat of injury. (*Id.* at 12). KBR argues that irreparable harm is present when a party must arbitrate issues that it never agreed to arbitrate. (*Id.* at 13). KBR asserts that this court's decision on the claims for declaratory and injunctive relief would "clarify and settle the legal relations at issue between the parties, and would relieve KBR of the uncertainty and controversy giving rise to these proceedings." (*Id.* at 12–13).

The ripeness doctrine prevents courts from entangling themselves in abstract disagreements by avoiding premature adjudication. *Abbott Labs v. Gardner*, 387 U.S. 136, 148–49 (1967); *Texas v. U.S.*, 497 F.3d 491, 498 (5th Cir. 2007).  Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review.  *U.S. v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003).  A declaratory judgment action is ripe for adjudication only if an actual controversy exists.  *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).  An actual controversy must be an immediate and real dispute between parties with adverse legal interests.  *Middle So. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

Altanmia's ripeness argument is not persuasive.  KBR seeks a declaratory judgment that Altanmia may not seek to resolve claims arising under Subcontract S0040 in the Arbitration of claims arising under Subcontracts S0138 and S00164.  The question of arbitrability is a question of law for the courts.  KBR argues that it will suffer irreparable harm by having to arbitrate issues that are outside the scope of the parties' contractual arbitration agreement.  *See Tristar Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed.Appx. 462, 464 (5th Cir. 2004) ("Questions of arbitrability are for the court 'where contracting parties would likely have expected a court to have decided the gateway matter.'"); *see also Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007) (recognizing a "distinction between questions of arbitrability (for the court) and questions of arbitral procedure (for the arbitrator)") (citing *Green Treat Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003)); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 483 F.3d 559, 560 (8th

Cir. 2007) ("[W]hen the issue presented is the arbitrability of a dispute based on contract interpretation, we are presented with a legal question.").

Altanmia's motion to dismiss based on lack of ripeness is denied.

### C.     Altanmia's Motion to Dismiss Kellogg Brown & Root Services, Inc. for Lack of Standing

Altanmia asserts that KBRSI has not been identified as a party to the Arbitration and cannot claim an interest or injury in the case.  Because KBRSI "has no involvement in any of the transactions between KBR and Altanmia," Altanmia argues that "[a]ny injury by [KBRSI] would be clearly conjectural, as it is notably absent from the Arbitration documents, as well as Subcontracts S00164, S0138, and S0040."  (Docket Entry No. 11 at 12).

In response, KBR points out that Altanmia named KBRSI as a defendant in its earlier, dismissed-without-prejudice lawsuit raising Subcontract S0040 claims.  KBR asserts that although KBRSI was not a party to Subcontract S0040,"the fact remains that Altanmia filed suit against [KBRSI] for these claims and subsequently refused to substitute the real party in interest or to dismiss [KBRSI] with prejudice in the Prior Lawsuit.  As a result, [KBRSI] remains under the threat of litigation in connection with Subcontract S0040."  (Docket Entry No. 27 at 14).

To demonstrate standing, a plaintiff must show 1) that it has suffered an "injury in fact" that is 2) fairly traceable to the challenged action to the defendant, and 3) the likelihood that the injury can be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Consolidated Companies v. Union*

*Pac. R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007). An "injury in fact" must be both concrete and particularized and either actual or imminent. *Friends of the Earth*, 528 U.S. at 180–81.

KBR's argument that KBRSI remains under the threat of litigation over Subcontract S0040 and therefore has standing to file this suit is not persuasive. The issue here is whether Altanmia may assert claims arising under Subcontract S0040 for resolution in the Arbitration of claims arising under Subcontracts S0138 and S00164. The issue is not whether Altanmia may sue KBRSI under Subcontract S0040. A decision from this court that claims against KBR under Subcontract S0040 may not be resolved in the pending Arbitration will not affect whether Altanmia may or may not sue KBRSI on those claims at a later time.

Altanmia's motion to dismiss KBRSI as a party for lack of standing is granted.

### D.    Altanmia's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Altanmia's Rule 12(b)(6) motion appears in a footnote. It reiterates Altanmia's argument that KBR seeks an impermissible advisory opinion. KBR argues that its claims are concrete and cognizable. KBR reiterates that it will suffer irreparable harm if Altanmia is allowed to submit its claims arising under Subcontract S0040 for resolution in the Arbitration and that Altanmia has consistently refused to agree not to do so.

Arbitration is a matter of contract; a party cannot be required to arbitrate disputes that he has not agreed to submit. *Moran v. Ceiling Fans Direct, Inc.*, No. 06-20810, 2007 WL 2597613, *3 (5th Cir. Sept. 6, 2007) (citing *PaineWebber Inc. v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001). The parties dispute whether claims arising under Subcontract S0040 are arbitrable and whether Altanmia may seek

rulings resolving those claims, either directly or indirectly, in the Arbitration of claims arising under Subcontracts S0138 and S00164.  The question of arbitrability is a matter of law to be decided by the courts.  *See Tristar Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed.Appx. 462, 464 (5th Cir. 2004).  In seeking declaratory and injunctive relief from this court, KBR does not request an advisory opinion.

Altanmia's motion to dismiss based on failure to state a claim is denied.

### E.     Altanmia's Rule 12(b)(7) Motion to Dismiss for Failure to Join a Necessary Party

Altanmia argues that the arbitrator, Professor Martin Hunter, is an indispensable party in this action.  "Excluding Professor Martin from this action would prohibit him from properly adjudicating the dispute currently before him, essentially usurping his authority and jurisdiction as arbitrator."  (Docket Entry No. 11 at 15).  Altanmia further contends that the declaratory or injunctive relief that KBR seeks could subject the parties to multiple, inconsistent judgments.

KBR responds that Professor Hunter is not an indispensable party.  KBR cites a number of cases in which courts have found that arbitrators or arbitration associations are not indispensable parties in actions involving whether a contractual claim is subject to arbitration.  "[A]s a matter of course, arbitrators are routinely not included as parties to actions involving whether particular claims are subject to arbitration."  (Docket Entry No. 27 at 16).  KBR also argues that because arbitrability is a question of law for a court, the arbitrator has no interest in the subject of this action that would make him an indispensable

21

party under Rule 19(a)(2).  KBR asserts that even if Professor Hunter was a necessary party, "the appropriate remedy is joinder, not dismissal," and "Altanmia has taken no action to join Professor Hunter to this case."  (*Id.* at 17 n.10).

Rule 19(a) provides:

> (a)  Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been so joined, the court shall order that the person be made a party.  If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

To determine whether an absent party is indispensable, a court focuses on the four factors set out in Rule 19(b):

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED.R.CIV.P. 19(b).

The burden is on Altanmia to show that the relief KBR seeks requires joining the arbitrator. *Boundy v. Dolenz*, No. 3:96cv0301-G, 2002 WL 1160075, at *5 (N.D.Tex. May 30, 2002). KBR seeks an injunction precluding Altanmia from asserting claims under Subcontract S0040 for resolution in the Arbitration of Subcontracts S0040 and S0138. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Altanmia points to no evidence in the record showing that the parties "clearly agreed to have the arbitrator[] decide (i.e., to arbitrate) the question of arbitrability." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995). This court's decision on whether Altanmia may assert claims under Subcontract S0040 in the Arbitration neither impinges on nor impedes Professor Hunter's authority to arbitrate the issues that the parties have agreed to arbitrate. Nor are the parties or Professor Hunter exposed to a risk of inconsistent judgments, as Altanmia suggests, because the parties have not submitted the question of the arbitrability of claims under Subcontract S0040 to Professor Hunter.

Arbitrators do have broad discretion to make decisions about what evidence they will accept and consider. *Int'l Chem. Workers Union v. Columbia Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003). It is not the role of the courts to dictate what evidence an arbitrator may consider in reaching his decision. "Arbitrators are not bound to hear all of the evidence tendered by the parties; however, they must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Prestige Ford v. Ford Dealer*

*Computer Servs., Inc.*, 324 F.3d 391, 395 (5th Cir. 2003).  This court does not decide what documents Altanmia may submit in the Arbitration, but rather what disputes may be resolved in the Arbitration.  Altanmia's motion to dismiss for failure to join an indispensable party is denied.

### F.    KBR's Application for a Preliminary Injunction

To obtain a preliminary injunction, KBR must show: (1) a substantial likelihood that KBR will prevail on the merits; (2) a substantial threat that KBR will suffer irreparable injury if the injunction is not granted; (3) that KBR's threatened injury outweighs the threatened harm to Altanmia if the injunction is granted; and (4) that granting the preliminary injunction will not disserve the public interest.  *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citing *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003)).  Because KBR seeks to enjoin Altanmia both from asserting claims arising under Subcontract S0040 for resolution in the Arbitration and from submitting documents relating to claims arising under Subcontract S0040 in the Arbitration, these issues are examined separately below.

### 1.    May Altanmia Assert Claims Arising Under Subcontract S0040 in the Arbitration?

Subcontracts S0138 and S00164 expressly provide that they are subject to "binding" arbitration.  Arbitration may be binding or nonbinding.  *See* 6 C.J.S. *Arbitration* § 2 (2004) ("An arbitration . . . is in the nature of a trial on the merits, albeit before a non-judicial tribunal.  In arbitration, the parties agree ahead of time that the arbiter's decision will be

either advisory or binding, whereas in mediation the decision is left entirely in the hands of parties in conflict.").  Because KBR disputes whether Altanmia may seek to resolve claims under Subcontract S0040 in the binding Arbitration of claims arising under Subcontracts S0138 and S00164, the issue is not whether claims under Subcontract S0040 are arbitrable in general, but more specifically whether they are subject to binding arbitration.

Subcontract S0040 states that "the parties will attempt in good faith to resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures."  This Subcontract provides that the parties must pursue ADR procedures before "the filing of any litigation" against KBR and that "failure to do so shall constitute a waiver of any legal rights with respect to the subject matter of the claim."  (Docket Entry No. 13, Ex. A at § 8.2).  KBR asserts that this language "clearly indicates that . . . a courtroom, not an arbitration, would be the forum for a final determination of the parties' rights."  (Docket Entry No. 18).  In response, Altanmia argues that Subcontract S0040 "is subject to alternative dispute resolution, including arbitration."  (Docket Entry No. 13 at 6).  Altanmia points out that Subcontract S0040 states that the "ADR procedures recommended by the Center for Public Resources . . . will be considered" for the purposes of resolving disputes under the Subcontract,  (Docket Entry No. 13, Ex. A at GC-7), and that the Center's procedures provide for arbitration, (Docket Entry No. 13, Ex. I).  Altanmia also argues that because "writings should be liberally construed in favor of arbitration, there is a strong likelihood that Subcontract S0040 is arbitrable."  (Docket Entry No. 13 at 7) (citing *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999)).

Subcontract S0040 is subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.  Generally, under the FAA, state law governs whether the contracting parties agreed to arbitrate and federal law determines the scope of the arbitration clause.  *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077–78 (5th Cir. 2002); *In re Weekley Homes, L.P.*, 180 S.W.3d 127 (Tex. 2005).  Subcontract S0040 contains a choice-of-law provision stating that "the Agreement shall be construed and governed by the laws of the State of Texas."  (Docket Entry No. 13, Ex. A at § 9.2).  Under both federal and Texas law, the duty to arbitrate remains one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit.  *Tittle*, 463 F.3d at 418 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)); *Freis v. Canales*, 877 S.W.2d 283, 283 (Tex. 1994) ("[w]hile courts may enforce agreements to arbitrate disputes, arbitration cannot be ordered in the absence of such an agreement."); *In re Kaplan Higher Educ. Corp.*, --- S.W.3d ----, No. 06-0072, 2007 WL 2404836, at *3 (Tex. Aug. 24, 2007) (internal quotations and citations omitted) ("Arbitration agreements are enforced according to their terms and according to the intentions of the parties.");  *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 220 (Tex.App.–Houston [1st Dist.] 1996, no writ) ( "An arbitration agreement need not be in any particular form, but no party is under a duty to arbitrate unless by clear language he has so agreed, and it must clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by that decision.").

Subcontract S0040 does not clearly express the parties' intent to submit disputes under that Subcontract to binding arbitration.  The Subcontract states that "the parties will

attempt in good faith to resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures.  ADR procedures recommended by the Center for Public Resources . . . will be considered for this purpose."  (Docket Entry No. 13, Ex. A at § 8.2.3).  As Altanmia points out, the procedures recommended by the Center for Public Resources ("CPR") do include binding arbitration.  (Docket Entry No. 13, Ex. I).[3]  The Subcontract states that pursuing ADR procedures as provided by the CPR "shall be a prerequisite to the filing of any litigation against [KBR]. . . .  [T]he failure to do so shall constitute a waiver of any legal rights with respect to the subject matter of the claim."  (Docket Entry No. 13, Ex. A at § 8.2).  But the Subcontract expressly contemplates litigation in the event that the parties are unable to resolve their disputes through ADR procedures.  Binding arbitration forecloses litigation on the merits of a claim.  The language requiring the parties to agree on ADR procedures to attempt to resolve disputes but allowing litigation if the attempt fails would be superfluous if the parties had intended to submit to binding arbitration with no recourse to legal remedies. The Subcontract *allows* the parties to agree on binding arbitration but does not *require* them to do so, as long as they attempt some form of ADR procedure before resorting to litigation.

Unlike Subcontracts S0138 and S00164, which expressly limit the parties to binding

---

[3] Contrary to KBR's argument, parties need not expressly use the term "arbitration" when creating a binding agreement to arbitrate.  Courts have enforced "arbitration-related language" that contracts have incorporated by reference.  *In re Premont Indep. Sch. Dist.*, 225 S.W.3d 329, 334 (Tex. App.–San Antonio 2007, orig. proceeding [mand. pending]) ("[I]nnumerable contracts are consummated every day in Texas that incorporate other documents by reference.  Arbitration-related language is no exception to this rule.  Thus, an arbitration agreement that is not signed may be incorporated by reference into the signed contract.") (internal quotations and citations omitted); *see also In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007); *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 782 (Tex. 2006).

arbitration as the exclusive procedure for dispute resolution, Subcontract S0040 does not clearly indicate the parties' intention to submit to binding arbitration.  Because it does not "clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by that decision," KBR has shown a substantial likelihood of success on this issue.  *Porter & Clements*, 935 S.W.2d at 220.

KBR must also show that it will suffer irreparable harm if Altanmia is able to obtain resolution of its claims under Subcontract S0040 in the Arbitration.  KBR contends that it "will be stripped of its contractual rights to have these claims resolved in litigation and will be forced to arbitrate in a foreign proceeding." (Docket Entry No. 1 at 4).  KBR argues that as a result, it will lose significant appellate rights to which it would otherwise be entitled and will incur significant additional expenses.  KBR asserts that courts have recognized that irreparable harm exists "whenever a party is required to arbitrate issues that are not subject to a valid agreement to arbitrate." (Docket Entry No. 18 at 5).

In response, Altanmia contends that KBR will not suffer irreparable injury because "KBR may collaterally attack any arbitration award if the Tribunal exceeds the scope of its authority." (Docket Entry No. 13 at 12).  Altanmia also asserts that "the threat of harm of which [KBR] complains is speculative and not imminent." (*Id.*).  Altanmia emphasizes that it has only produced documents on which it intends to rely to support its arbitrable claims under Subcontracts S0138 and S00164, as ordered by the arbitrator.  Noting that "Altanmia has not proffered an explanation as to the purpose behind the production of Subcontract S0040 claim documents," Altanmia argues that KBR "incorrectly assumes" that Altanmia

28

intends to assert causes of action under Subcontract S0040, even though its Statement of Claim does not seek relief based on Subcontract S0040.  (*Id.*)

In the Fifth Circuit, the arbitrability of disputes is a matter of contract law; a court cannot compel a party to arbitrate unless the court determines that the parties agreed to arbitrate the dispute in question.  *See, e.g.*, *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998); *Bridas S.A.P.I.C. v. Gov't of Turmenistan*, 345 F.3d 347, 354 n.4 (5th Cir. 2003) ("[T]he purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so."); *see also see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ("Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit."); *AT&T Techs.*, 475 U.S. at 648 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").  As a result, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.  *Tittle*, 463 F.3d at 421 (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  However, this circuit has not explicitly held that a party suffers irreparable injury when it is forced to arbitrate issues that it did not agree to arbitrate.

Some courts have reached this result.  *See, e.g.*, *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (affirming *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997), in which the court found irreparable harm if a party had to arbitrate an issue that is not arbitrable); *McLaughlin*

*Gormley King Co. v. Terminix Intern. Co., LP*, 105 F.3d 1192, 1194 (8th Cir. 1997) ("If a court has concluded that a dispute is non-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award."); *Md. Cas. Co.*, 107 F.3d at 985 (holding that the appellee "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable"); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 514 (3d Cir. 1990) ("[T]he harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's determination fo his own authority. . . . A reluctant party has a right to a judicial determination of his obligation to arbitrate.") (*overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82 (2002)).

Some courts have found that a party is not irreparably harmed if it is forced to arbitrate a nonarbitrable  issue.  These courts have reasoned that because the arbitrator's decision on a nonarbitrable issue can be challenged in court, the only cost incurred by the resisting party is a monetary one, which does not impose irreparable harm.  *See, e.g.*, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1112 (11th Cir. 2004) ("Even if the defendants were permitted to proceed with arbitrating nonarbitrable claims, it is unclear how the plaintiffs would suffer any injury at all, much less irreparable injury.  The plaintiffs would

30

not have to participate in the defendants' arbitration proceedings.  Even if the defendants

obtained a default verdict against them, they would be unable to have it enforced in a district

court . . . ."); *AT&T Broadband, LLC. v. Int'l Brotherhood of Electrical Workers*, 317 F.3d

758, 762 (7th Cir. 2003) ("If AT&T loses in the arbitration, the union will seek to enforce

its victory; AT&T can defend on the theory that it had not agreed to arbitrate this kind of

dispute. . . . All AT&T could lose . . . is the cost of presenting the arguments to the arbitrator,

and it has long been established that the expense of adjudication is not irreparable injury.");

*Tejidos de Coamoa, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8, 14 (1st Cir.

1994) ("It is true that participating would cause one form of loss, namely, the time and

expense of litigation before the arbitrator.  But courts have ordinarily not deemed litigation

expense to be substantial and irreparable injury warranting an injunction."); *Woodlawn*

*Cemetery v. Local 365, Cemetery Workers and Greens Attendants Union*, 930 F.2d 154, 157

(2d Cir. 1991) ("The monetary cost of arbitration certainly does not impose legally

recognized irreparable harm.") (citing *Emery Air Freight Corp. v. Local Union* 295, 786 F.2d

93, 100 (2d Cir. 1986).  These cases are distinguishable because they involve clear arbitration

clauses in which the parties agreed to arbitrate certain claims and there was a dispute as to

the scope of that agreement.  In the current case, the parties dispute the threshold issue of

whether they agreed to arbitrate any claims related to Subcontract S0040.

  In light of Fifth Circuit precedent establishing that a court cannot compel a party to

arbitrate unless the court determines that the party agreed to arbitrate, KBR has shown that

it will suffer irreparable harm if it must arbitrate nonarbitrable disputes and seek redress later.

31

The fact that KBR might able to collaterally challenge an award resolving nonarbitrable claims does not remedy the harm caused by requiring it to arbitrate claims under a Subcontract that does not require binding arbitration. *See AT&T Techs.*, 475 U.S. at 648; *see also* 11A FEDERAL PRACTICE & PROCEDURE § 2948.1 ("[W]hen the threatened harm would impair the court's ability to grant an effective remedy," there is "a need for preliminary relief."). Subcontract S0040 does not include an agreement to submit disputed claims under that Subcontract to binding arbitration. Forcing KBR to do so can constitute irreparable harm. *See Chicago School Reform Bd. of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F.Supp.2d 987, 996 (N.D.Ill. 1999). KBR has shown that it will suffer irreparable injury if Altanmia is allowed to assert claims under Subcontract S0040 in the Arbitration.

The balance of hardships also weighs in favor of an injunction precluding Altanmia from seeking to resolve claims under Subcontract S0040 in the Arbitration of claims under Subcontracts S0138 and S00164. If this court does not issue an injunction, KBR will be forced to arbitrate disputed claims that it did not agree to resolve through binding arbitration. An injunction preventing Altanmia from seeking to resolve claims under Subcontract S0040 in the Arbitration  neither implicates nor limits the arbitrator's authority to hear and decide the issues that the parties have agreed to arbitrate.

Finally, an injunction will not disserve the public interest. Although federal policy favors the enforcement of arbitration agreements, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648. "The central purpose of the FAA is to ensure that

private agreements to arbitrate are enforced according to their terms." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 458 (2003) (internal citations and quotations omitted). An injunction preventing Altanmia from seeking to resolve claims related to Subcontract S0040 in the Arbitration would effectuate the parties' agreement without treading on the arbitrator's authority to decide the disputes the parties have agreed to submit to him. Nor would an injunction interfere with the arbitral process. Granting KBR's request for injunctive relief on this issue does not contravene the public policy favoring the enforcement of arbitration agreements as an efficient way to resolve disputes without litigation.

### 2. Can Altanmia Submit Documentation of Claims Arising under Subcontract S0040 in the Arbitration?

KBR argues that it has shown a substantial likelihood of succeeding on the merits of its argument that Altanmia may not submit documents relating to claims under Subcontract S0040 in the Arbitration of claims under Subcontracts S0138 and S00164. KBR cites cases to support its argument that arbitrators may not consider evidence of nonarbitrable issues. *See Delta Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 600–01 (5th Cir. 1989); *Houston Lighting & Power Co. v. Int'l Brotherhood of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 180–81 (5th Cir. 1995); *Bowater Carolina Co. v. Rock Hill Local Union No. 1924*, 871 F.2d 23, 24–26 (4th Cir. 1989); *Matteson v. Radar Sys., Inc.*, 99 F.3d 108, 112–15 (3d Cir. 1996). KBR argues that because evidence relating to claims under Subcontract S0040 does not "arise out of" or "relate to" Subcontracts S0138 or S00164, such evidence is not within the scope of the Arbitration and the arbitrator has no authority to

consider it.

In response, Altanmia asserts that even if claims under Subcontract S0040 are not arbitrable, KBR has not shown a substantial likelihood of success on its argument that this court should enjoin Altanmia from submitting documents that might relate to its claims under Subcontract S0040 in the Arbitration.   Altanmia argues that it is for the arbitrator to determine the admissibility and relevance of evidence submitted in arbitration proceedings. *Castleman v. AFC Enters.*, 995 F. Supp. 649 (N.D. Tex. 1997).  Altanmia asserts that it has only identified documents on which it intends to rely to support its claims under Subcontracts S0138 and S00164, and that there is no evidence of any intent to arbitrate claims under Subcontract S0040 in the Arbitration.  (Docket Entry No. 13 at 13).  "KBR incorrectly assumes that the purpose" of submitting documentation of claims under Subcontract S0040 "is to assert additional causes of action under Subcontract S0040."  (*Id.*)  To support its argument, Altanmia points to its Statement of Claim in its notice for arbitration, in which Altanmia does not seek relief under Subcontract S0040.  In addition, Altanmia argues that there is no evidence to suggest that by considering the documents, the arbitrator will make rulings affecting claims under Subcontract S0040.  Altanmia argues that an injunction "would prevent Altanmia from presenting relevant evidence to the Tribunal in support of its meritorious and properly arbitrable vehicle claims under Subcontract S0138 and S00164." (Docket Entry No. 13 at 15–16).  Altanmia asserts that "the extent to which KBR had authority to direct the conduct or effect the procedures of U.S. military personnel" escorting Altanmia's fuel convoys is relevant to its claims under Subcontracts S0138 and S00164, and

that its individual vehicle claims under Subcontract S0040 may be relevant to this fact issue. (*Id.* at 21).

KBR has failed to show a substantial likelihood of success on the merits on its argument that this court may enjoin Altanmia from submitting documents that relate to claims arising under Subcontract S0040 in the Arbitration.  Although the cases on which KBR relies establish that an arbitrator may not exceed the scope of his authority and decide issues not submitted by the parties for arbitration, these cases do not support KBR's assertion that it is for this court, rather than the arbitrator, to determine the admissibility of documents in the Arbitration.  For example, in *Delta Steamboat Co.*, 889 F.2d 599, a steamboat captain lost control of his vessel and almost collided with barges.  When the captain's employment was terminated, the captain's union filed a grievance that went to arbitration. The collective bargaining agreement between the employer and the union provided that a captain could only be discharged for proper cause, such as insubordination or carelessness.  The arbitrator found that the captain had been grossly careless but ordered reinstatement in part based on a finding of disparate discipline.  On appeal to the Fifth Circuit, the employer challenged the reinstatement on the ground that the arbitrator, having found proper cause for dismissal, had no authority under the arbitration agreement to award a remedy at odds with established company disciplinary procedures.  The Fifth Circuit affirmed the district court's decision to vacate the portion of the arbitral award requiring reinstatement.  The court stated that the arbitrator, "having found [the captain] grossly careless, impliedly found proper cause for discipline.  That being so, the arbitrator was without authority, under the bargaining

35

agreement, to reinstate [the captain." *Id.* at 604.  The court did not, as KBR argues, order vacatur because the arbitrator considered evidence of disparate treatment.

Similarly, in *Houston Lighting & Power Co.*, 71 F.3d 179, the court considered a challenge to an arbitration award.  That case also involved a union grievance on behalf of a discharged employee.  The arbitration issue was whether the employer had violated its collective bargaining agreement with the union by laying the employee off without regard to his seniority.  At arbitration, the union argued that the process for evaluating employees' performance and determining which employees would be laid off was arbitrary and unreasonable.  In the alternative, the union argued that the evaluation process was unfairly applied to the laid-off employee.  The arbitrator found that the evaluation process was facially valid but determined that its application to the employee was unreasonable.  As a result, the arbitrator found that the employer was not justified in discharging the employee because, in the arbitrator's own assessment of the employee's qualifications under the process, the employee deserved a higher evaluation score than he had received.  The Fifth Circuit vacated the arbitration award, finding that "[b]y performing his own re-evaluation, the arbitrator went beyond the scope of his authority, and beyond the parties' contractual agreement." *Id.* at 185.  The court did not vacate the award because the arbitrator exceeded his authority in considering the evidence submitted by the union as to how the employee had been evaluated.[4]

---

[4]     Other cases are consistent.  In *Bowater Carolina Co.*, 871 F.2d 23, a millwright suffered an on-the-job back injury.  After several injury-related absences from work, the

In these cases, the courts reviewing the arbitration award found that the arbitrators had

exceeded their authority by deciding issues that the parties had not submitted for arbitration.

In none of the cases did the courts find that the arbitrators had exceeded their authority by

_____

millwright's employer refused to allow him to return to work because of the risk of reinjury.  The millwright's union filed a grievance that proceeded to arbitration.  The employer and union jointly framed the arbitration issue as whether the employer violated its labor agreement with the union by refusing to allow the millwright to return to work.  Part of this dispute focused on whether the millwright's injury was "nonindustrial" and subject to certain certification procedures under the labor agreement, or "industrial" and not covered by the labor agreement at all.  The arbitrator found that the employer had not violated the labor agreement.  The arbitrator did not stop there.  Because that finding left the "situation without a solution. . . . It appears, therefore, that the present dispute can only be finally resolved by determining whether there was cause to deny [the millwright] the right to return to work."  *Id.* at 25.  After reviewing medical evidence of the millwright's injury submitted by the employer, the arbitrator found that the millwright was able to return to work and should be reinstated with back pay.  The Fourth Circuit vacated the arbitrator's decision and stated that evaluating the medical evidence was unnecessary to decide the narrow issue that the parties had jointly submitted.  Although the court found that the arbitrator decided more than the dispute the parties had submitted, the court did not find that the employer had wrongfully offered the medical evidence in the first place.  The court noted that the employer had submitted the medical evidence only as a contingency in the event that the arbitrator found that the millwright's injury was nonindustrial and subject to the labor agreement's certification procedures.  Similarly, in *Matteson*, 99 F.3d 108, a truck drivers' union initiated arbitration with the drivers' employer to resolve a dispute over how to calculate and deduct from drivers' pay the cost of tolls that the drivers paid on their trips.  Although the drivers complained of other pay-related problems, at arbitration the parties' arguments narrowed the dispute to whether the employer's newly adopted schedule for calculating tolls violated the master agreement between the union and the employer.  The arbitrator, a joint committee of three employer representatives and three union representatives, ultimately issued a decision that broadly addressed a number of payment issues, including the percentage of gross revenues the drivers would receive and how ancillary charges and toll costs would be allocated.  The union went to court, arguing that the arbitration award should be vacated because the arbitrators went beyond the scope of the parties' submissions.  On appeal, the Third Circuit found itself "hampered in the effort to define the issues" because the parties had failed to prepare a single document containing the issues they wished to submit for arbitration.  *Id.* at 114.  Nevertheless, the court found that in the "tangle of documents" submitted by the parties, the consistent theme running through the arbitration process was the parties' dispute over the calculation of the toll costs.  *Id.*  The court held that the joint committee exceeded its authority by deciding issues that the parties had not submitted to it and vacated the arbitration award.  The court did not vacate because the joint committee had exceeded its authority by considering the "tangle of documents" submitted.  Nor did the court base its vacatur decision on the fact that the parties submitted documents that went beyond the toll issue.

allowing a party to submit evidence that related to issues beyond those submitted for arbitration.

Arbitrators have broad discretion to make decisions about what evidence they will accept and consider. *Int'l Chem. Workers Union v. Columbia Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003). "Arbitrators are not bound to hear all of the evidence tendered by the parties; however, they must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 395 (5th Cir. 2003). It is for the court to enforce the contractual limits on the claims submitted in the Arbitration; it is for the arbitrator to decide what evidence is relevant to those claims. Because "arbitration is a creature of contract," the parties determine the scope of the arbitrator's authority by deciding which issues they will submit for arbitration. *United Steelworkers of America v. Am. Mfg.*, 363 U.S. 564, 570 (1960) (Brennan, J., concurring). KBR and Altanmia did not also contractually determine what evidence the parties may offer to the arbitrator. None of the cases that KBR cites supports the proposition that at least in the absence of a contractual limitation, a court should enjoin a party from submitting evidence on the ground that it is irrelevant to arbitrable issues. KBR has failed to show a likelihood of success on its assertion that Altanmia may not submit documents that may relate to claims under Subcontract S0040 as evidence in the Arbitration of claims arising under Subcontracts S0138 and S00164.

Nor has KBR shown that it will suffer irreparable injury absent an injunction to prevent Altanmia from submitting documents that may relate to claims arising under

Subcontract S0040 in the Arbitration to support claims under Subcontracts S0138 and S00164. This court has enjoined the submission of claims under Subcontract S0040 for resolution in the Arbitration. KBR's arguments regarding irreparable injury focus primarily on the harm it will suffer if Altanmia is allowed to assert claims arising under Subcontract S0040 in the Arbitration, not on the harm it will suffer if Altanmia is allowed to submit documents relating to those claims to support its claims under Subcontracts S0138 and S00164. As to the latter point, KBR argues that it will be irreparably harmed by having "to locate and produce a substantial amount of additional documents" relating to Subcontract S0040, "which KBR should not be required to locate and produce in the Arbitration." (Docket Entry No. 1 at 5). Having to locate and produce additional documents to respond to Altanmia's evidence does not rise to the level of irreparable injury. KBR has failed to show irreparable injury sufficient to warrant this court's intrusion into the arbitrator's authority to make evidentiary rulings.

The balance of hardships also weighs against an injunction preventing Altanmia from submitting documents that relate to claims under Subcontract S0040 in the Arbitration. Such evidentiary decisions are within the arbitrator's province. *Certain Underwriters at Lloyd's London*, 489 F.3d 580. It is not the role of this court to predetermine the relevancy of evidence the parties may submit in the Arbitration. Although arbitrators need not hear all the evidence that the parties submit, an arbitrator must "give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Prestige Ford*, 324 F.3d at 395. Whether documents relating to claims arising under Subcontract S0040 are also proof

39

of claims under Subcontracts S0138 and S00164 is a question for the arbitrator to determine. *See Int'l Chem. Workers Union*, 331 F.3d at 497.

Finally, the public interest does not support granting an injunction against Altanmia submitting documents relating to claims under Subcontract S0040 in the Arbitration.  The parties did not agree in Subcontracts S0138 and S00164 either to limit the admissibility of evidence in binding arbitration of claims under those subcontracts or to submit disputes to or evidence submitted in arbitration to the court.  Because an arbitrator normally has "the authority to decide all matters necessary to dispose of the claim" after "it has been determined that a substantive dispute is subject to arbitration," an injunction preventing Altanmia from submitting evidence to support its claims in the Arbitration would interfere with the arbitral process.  The injunction would not serve the public interest in maintaining the integrity of arbitration as a process by which parties voluntarily submit to a private tribunal, rather than a public tribunal, to settle their disputes.

In summary, KBR has shown a substantial likelihood of success on its claim that Altanmia may not submit claims under Subcontract S0040 for resolution in the Arbitration; it has shown that it will suffer irreparable injury if Altanmia is allowed to assert such claims in the Arbitration; it has shown that its threatened injury outweighs the harm Altanmia will suffer if an injunction is granted; and it has shown that an injunction preventing Altanmia from submitting claims under Subcontract S0040 for resolution in the Arbitration does not disserve the public interest.  KBR has not shown a substantial likelihood of success on its claim that Altanmia may not submit documents relating to claims arising under Subcontract

40

S0040 in the Arbitration; it has failed to show that it will suffer irreparable injury if Altanmia is allowed to offer such evidence; it has not shown that its threatened injury outweighs the harm Altanmia will suffer if an injunction is granted; and it has not shown that an injunction preventing Altanmia from submitting documentation of claims under Subcontract S0040 in the Arbitration will not disserve the public interest.

This court grants KBR's request for a preliminary injunction preventing Altanmia from asserting claims arising under Subcontract S0040 for resolution in the Arbitration of claims arising under Subcontracts S0138 and S00164.  This court denies KBR's request for an injunction preventing Altanmia from submitting documents in the Arbitration, leaving it to the arbitrator to decide what documents are relevant and admissible in that forum.

## VI.    Conclusion

Altanmia's motion to dismiss is denied in part and granted in part.  Altanmia's motion to stay the litigation pending service is denied.  KBR's application for a preliminary injunction is denied in part and granted in part.  KBR must submit a proposed preliminary injunction to this court no later than **December 7, 2007**.

SIGNED on November 21, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

42