# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| KELLOGG BROWN & ROOT INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-07-2684 |
| ALTANMIA COMMERCIAL MARKETING CO. W.L.L., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

This case involves a dispute between Kellogg Brown & Root International, Inc. ("KBR") and Altanmia Commercial Marketing Co. W.L.L. ("Altanmia") over the arbitrability of claims for reimbursement for vehicle losses. The claims arise under a contract between these parties identified as Subcontract GU67-KJ5-S0040 ("Subcontract S0040").

KBR sued to enjoin Altanmia from asserting claims arising under Subcontract S0040 in the contractually agreed arbitration of claims arising under two other subcontracts, one identified as Subcontract RIO-JIK-S0138 and the other as Subcontract RIO-JIK-S00164 ("Subcontract S0138" and "Subcontract S00164"). KBR also seeks a declaratory judgment that claims arising under Subcontract S0040 are not arbitrable and that KBR is not obligated to compensate Altanmia for damages resulting from the performance of Subcontract S0040.

This court issued a preliminary injunction prohibiting Altanmia "from asserting claims related to Subcontract S0040 in the arbitration of claims arising under Subcontracts S0138 and S00164," on the ground that Subcontract S0040 does "not clearly express the parties' intent to submit disputes under that Subcontract to binding arbitration." (Docket Entry No. 29 at 26, Docket Entry No. 50). Altanmia now moves to compel arbitration of claims arising under Subcontract S0040. Altanmia asks this court to dissolve the preliminary injunction and to stay this litigation pending the outcome of that arbitration. (Docket Entry No. 60). KBR has responded, (Docket Entry No. 63); Altanmia has replied, (Docket Entry No. 64); and KBR has surreplied, (Docket Entry No. 65).

Based on the motion and response, the parties' submissions, and the applicable law, this court denies Altanmia's motion to compel arbitration and to stay. The reasons are set out in detail below.

## I.    Background

The relevant facts are set out in this court's November 21, 2007 memorandum and order and are only summarized briefly below. In 2003, KBR entered into a series of subcontracts with Altanmia to provide fuel transportation services for the "Restore Iraqi Oil" program of the U.S. Army Corps of Engineers. These subcontracts included Subcontracts S0040, S0138, and S00164. Subcontracts S0138 and S00164, respectively dated October 28, 2003 and November 5, 2003, involved the rental of benzene and kerosene tanker trailers. Both of these Subcontracts contained provisions stating that any disputes "arising under or related to" these Subcontracts would be resolved in "binding arbitration in accordance with

2

the rules, regulations, and procedures of the American Arbitration Association." (Docket Entry No. 13, Ex. C at 003423, Ex. D at 003284).

Subcontract S0040, dated May 18, 2003, involved the rental of fuel tankers. The parties agree that Subcontract S0040 includes the General Conditions Document. A dispute resolution provision is part of Subcontract S0040's General Conditions Document. The provision stated that if any dispute could not be resolved through negotiation, the parties would "attempt in good faith to resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures." (Docket Entry No. 13, Ex. A at § 8.2). The provision continued:

> The parties desire to resolve any disputes arising out of this Subcontract amicably and without litigation . . . . Accordingly, [Altanmia] agrees that the filing of a claim [with Brown & Root Services's project manager] within the time prescribed and the pursuit of the procedures outlined above in a timely manner shall be a prerequisite to the filing of any litigation against [Brown & Root Services], Owner or Engineer, and that the failure to do so shall constitute a waiver of any legal rights with respect to the subject matter of the claim.

(*Id.*, Ex. A at § 8.2)

On May 9, 2007, Altanmia sued KBR in federal court, asserting claims arising under Subcontract S0040 and alleging breach of contract and promissory estoppel causes of action. On the same date, Altanmia initiated arbitration proceedings for claims arising under Subcontracts S0138 and S00164 (the "Arbitration"). On August 6, 2007, Altanmia dismissed without prejudice its federal lawsuit against KBR, without having served KBR with process.

The Arbitration arising under Subcontracts S0138 and S00164 is currently scheduled

3

to begin on July 14, 2008 in The Hague.  In discovery related to that Arbitration, Altanmia produced documents relating to claims arising under Subcontract S0040.  KBR's counsel asked Altanmia to withdraw those documents because those claims did not relate to the Arbitration.  Altanmia refused.  KBR then filed this lawsuit, seeking a preliminary and permanent injunction to prevent Altanmia from arbitrating claims arising under Subcontract S0040 in the Arbitration of claims arising under Subcontracts S0138 and S00164.

This court held a hearing on the application for injunctive relief.  After the hearing, the parties submitted extensive briefs and voluminous materials.  The only issue was arbitrability of the vehicle-reimbursement claims arising under Subcontract S0040 in the Arbitration of the claims arising under the two other Subcontracts.  In its briefs, Altanmia did not dispute that the parties agreed on the dispute resolution provision found in the General Conditions Document of Subcontract S0040.

On November 21, 2007, this court issued a lengthy opinion interpreting the dispute resolution provision in the General Conditions Document of Subcontract S0040.  This court found that the provision "does not clearly express the parties' intent to submit disputes under that Subcontract to binding arbitration."  (Docket Entry No. 29 at 26).  The dispute resolution provision in Subcontract S0040 states only that "the parties will attempt in good faith to resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures . . . recommended by the Center for Public Resources."  (Docket Entry No. 13, Ex. A at § 8.2.3).  Because ADR procedures recommended by the Center for Public Resources are not limited to binding arbitration but include other methods, and because the subcontract allows

4

litigation if those methods fail, this court found that the provision "*allows* the parties to agree on binding arbitration but does not *require* them to do so, as long as they attempt some form of ADR procedure before resorting to litigation." (Docket Entry No. 29 at 27). Under the Subcontract S0040 dispute resolution provision, it did not "clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by that decision." (Docket Entry 29 at 28). This court granted KBR's application for a preliminary injunction to prevent Altanmia from asserting claims arising under Subcontract S0040 in the Arbitration of claims arising under Subcontracts S00164 and S0138.

On January 3, 2008, Altanmia filed a stipulation with this court that stated as follows:

> Defendant Altanmia Commercial Marketing Co. W.L.L. ("Altanmia") stipulates that in the international arbitration proceeding styled *Altanmia Commercial Marketing Company W.L.L. v. Kellogg Brown & Root International, Inc.*, No. 50 181 T 00189 07, International Centre for Dispute Resolution (Hunter, Arb.), Altanmia will not attempt to arbitrate or obtain a recovery on vehicle reimbursement claims arising under a subcontract identified as Subcontract No. GU67-KJ5-S-0040.

(Docket Entry No. 40 at 1). On January 14, 2008, after a hearing, this court entered a preliminary injunction order preventing Altanmia "from asserting claims related to Subcontract S0040 in the Arbitration of claims arising under Subcontracts S0138 and S00164," tracking Altanmia's stipulation. (Docket Entry No. 50 at 2).

Altanmia now moves to compel arbitration of KBR's declaratory judgment claim as to KBR's liability for vehicle-reimbursement claims arising under Subcontract S0040. Altanmia argues that this court's preliminary injunction was based on an "incorrect"

assumption "that the documents attached to KBR's Injunction Application are an accurate representation of Subcontract S0040." (Docket Entry No. 64 at 10).  Citing *McKee v. Home Buyers Warranty Corp.*, 45 F.3d 981, 983 (5th Cir. 1995), Altanmia argues that agreements such as Subcontract S0040's alternative dispute resolution provision have been interpreted under Fifth Circuit case law "as requiring 'binding' arbitration." (Docket Entry No. 60 at 2). Altanmia also argues that Subcontract S00164, which contains a binding arbitration provision, states that it "supersede[s] all prior . . . Subcontracts." (*Id.* at 2).  Altanmia contends that "KBR also agreed to arbitrate the vehicle reimbursement claims involved in this litigation when it drafted and executed the concededly binding arbitration provision in Subcontract S00164." (*Id.* at 3).  Finally, Altanmia argues that in this litigation, it has not waived its right to arbitrate vehicle-reimbursement claims related to Subcontract S0040.

In response, KBR states that Altanmia has conceded, both in its stipulation and in its representations to this court, that claims related to Subcontract S0040 are not arbitrable and that Altanmia would not seek to arbitrate them.  KBR argues that Subcontract S0040 does not clearly express the parties' intent to arbitrate and that the arbitration clause in Subcontract S00164 does not govern claims arising under Subcontract S0040.  KBR points out that Altanmia has acknowledged in this court that Subcontracts S0040, S0138, and S00164 are "three different contracts," and that the parties' pattern of conduct shows that they considered Subcontract S0040 to be separate from Subcontract S00164.  (Docket Entry No. 63 at 20). KBR asserts that the parties executed multiple change orders to modify the terms of Subcontract S0040, as required by that Subcontract's language, even after the parties had

6

executed Subcontract S00164, which is contrary to Altanmia's position that Subcontract S00164 subsumes Subcontract S0040.

The parties' arguments are considered below.

## II.    The Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Under the FAA, a court must decide "whether the parties agreed to arbitrate the dispute in question.  This determination involves two considerations:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Tittle v. Enron Corp*., 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)).

In a diversity case, courts generally use state law to governs whether the contracting parties agreed to arbitrate and federal law to determine the scope of the arbitration clause.[1] *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077–78 (5th Cir. 2002); *In re Weekley Homes, L.P.*, 180 S.W.3d 127 (Tex. 2005).  Subcontract S0040 contains a choice-of-law

_____

[1]  Altanmia is a Kuwait entity of limited liability with its principal place of business in Kuwait.  KBR is a Delaware corporation with its principal place of business in Houston, Texas.

provision stating that "the Agreement shall be construed and governed by the laws of the State of Texas." (Docket Entry No. 13, Ex. A at § 9.2). Under both federal and Texas law, the duty to arbitrate remains one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit. *Tittle*, 463 F.3d at 418 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)); *Freis v. Canales*, 877 S.W.2d 283, 283 (Tex. 1994) ("[w]hile courts may enforce agreements to arbitrate disputes, arbitration cannot be ordered in the absence of such an agreement."); *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007) ("Arbitration agreements are enforced according to their terms and according to the intentions of the parties.") (internal quotations and citations omitted); *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 220 (Tex.App.–Houston [1st Dist.] 1996, no writ) ( "An arbitration agreement need not be in any particular form, but no party is under a duty to arbitrate unless by clear language he has so agreed, and it must clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by that decision.").

If there is a binding agreement to arbitrate, a court must then decide whether the dispute is within the scope of that agreement. *Tittle*, 463 F.3d at 418. Finally, the court must determine whether "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 418 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)).

## III.    Analysis

### A.    The Parties' Contentions

Altanmia asserts that throughout the course of this litigation, it has "disputed KBR's representations as to the contents of Subcontract S0040" and that this court's preliminary injunction relies on an incorrect factual determination "that the documents attached to KBR's Injunction Application are accurate and complete copies of Subcontract S0040." (Docket Entry No. 64 at 11, 15). Altanmia asserts that there are disputes as to the contents of Subcontract S0040 and faults this court for failing to allow discovery into those disputes. At the same time, Altanmia did not, and does not now, contend that there is any dispute as to whether the parties agreed to the dispute resolution provision in the General Conditions Document that was part of Subcontract S0040.[2] Altanmia does not dispute that the General Conditions Document, with its specific dispute resolution provision, is part of Subcontract S0040. Altanmia argues that this clause requires binding arbitration.

Altanmia focuses on language in the General Conditions Document attached to Subcontract S0040 that "requires the parties to attempt to resolve disputes under 'agreed Alternate Dispute Resolution (ADR) procedures,' including 'ADR procedures recommended

---

[2] In its August 28, 2007 motion to dismiss, Altanmia acknowledges that Subcontract S0040 states as follows:

> In the event [Altanmia] is dissatisfied with the final decision of [KBR] and the parties are unable to resolve their differences through negotiation, the parties will attempt in good faith *to resolve the dispute under agreed Alternative Dispute Resolution (ADR) procedures* recommended by the Center for Public Resources.

(Docket Entry No. 11 at 8 n.18). In quoting this language, Altanmia cites to section 8.2.3 of the General Conditions Document, attached as Exhibit G to its motion. Altanmia relied on this language to support its argument that "there is a strong likelihood that Subcontract S0040 is arbitrable." (*Id.* at 8 n.18).

by the Center for Public Resources.'" (Docket Entry No. 60 at 11–12).  Altanmia points out

that such dispute resolution procedures recommended by the Center for Public Resources

("CPR") include binding arbitration and that CPR rules "state that any arbitration conducted

pursuant to them will result in the issuance of an award that is 'final and binding' upon the

parties." (*Id.* at 12).  Altanmia contends that this language constitutes a binding arbitration

agreement, even though the alternate dispute resolution provision "mentions a subsequent

resort to litigation." (*Id.* at 12).  Citing *McKee*, 45 F.3d at 983–84, Altanmia argues that "a

contract's requirement of arbitration as a prerequisite to litigation requires 'binding'

arbitration where the contract calls for arbitration pursuant to procedures stating that they

will result in the issuance of a 'binding' award." (*Id.* at 12–13).  Altanmia relies on *Porter

& Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 221 (Tex. App.—Houston [1st Dist.] 1997),

and related cases to show that Texas law demands a similar interpretation of Subcontract

S0040.  Altanmia also points out that in an earlier federal-court proceeding in the Southern

District of Mississippi, KBR filed a motion to compel arbitration based on the same language

contained in a separate subcontract with a third party.  In that motion, KBR argued that the

dispute resolution provision "is sufficient to compel arbitration."  *Storm Reconstruction

Servs., Inc. v. Kellogg Brown & Root Servs., Inc.*, No. 1:06CV726-LG-JMR, 2007 WL

3124559 (S.D. Miss. Oct. 24, 2007).[3]

---

[3] As discussed in more detail below, however, the *Storm Reconstruction* court rejected
KBR's argument and denied the motion to compel, holding, as this court did,  that the dispute
resolution provision did not clearly indicate the parties' intention to submit disputes to arbitration.
Like this court, the Mississippi federal court noted that the CPR "has set forth procedures and rules
for not only arbitrations, but also for other types of ADR, including mediations and mini-trials."

Altanmia also argues that the vehicle-reimbursement claims arising under Subcontract S0040 are arbitrable because they fall within Subcontract S00164's arbitration clause. Subcontract S00164 requires arbitration of "any claim or dispute between the parties arising under or arising under this SUBCONTRACT."  (Docket Entry No. 60, Ex. D at 003422). Altanmia argues that this language covers claims arising under Subcontract S0040 because "S0040 claims 'relate to' Subcontract S00164" and because Subcontract S00164's arbitration provision "supersedes" Subcontract S0040's dispute resolution provision.  (Docket Entry No. 60 at 17).  Altanmia contends that Subcontract S00164 is "a continuation of the parties' pre-existing contractual relationship under Subcontract S0040, concerning an identical subject matter and having an identical purpose."  (*Id.* at 18).  Pointing out that KBR used the same process for administering vehicle-reimbursement claims under both Subcontract S0040 and Subcontract S00164, Altanmia argues that Subcontract S0040 claims are "related to" Subcontract S00164 because the overlap in claims processing for both Subcontracts "means that KBR's resolution of S00164 claims likely will have an effect upon its resolution of S0040 claims."  (*Id.* at 19).  Altanmia also contends that Subcontract S00164's arbitration provision governs the parties' vehicle-reimbursement claims because that Subcontract "supersedes all prior Subcontracts" between the parties.  (*Id.* at 19, punctuation omitted).

Lastly, Altanmia argues that it is not estopped from arbitrating, and has not waived its right to arbitrate, claims arising under Subcontract S0040.  Altanmia contends that

---

2007 WL 3124559, at *3.

"[e]ither Altanmia's representations concerning the arbitrability of S0040 claims are binding and KBR's declaratory judgment claims are moot, or Altanmia's stipulations are not binding and arbitration is not foreclosed." (Docket Entry No. 64 at 20). Altanmia also argues that any legal admissions it made as to the arbitrability of claims arising under Subcontract S0040 do not contradict the legal arguments in its motion because "[t]he legal effect of judicial admissions is an *evidentiary* doctrine intended to serve as a time-saving device to eliminate the need for presentation of *evidence* on a judicially admitted fact." (*Id.* at 21). Because arbitrability "is a question of law" and "[a]n attorney's statements and stipulations concerning legal issues do not (and cannot) change the law," Altanmia contends that "the answer to the legal question of whether a claim is arbitrable is not changed by the representations of counsel." (*Id.* at 22).

In response, KBR points out that on multiple occasions, Altanmia has conceded in its briefs and representations to this court that claims arising under Subcontract S0040 are not arbitrable and that Altanmia would not seek to arbitrate such claims. KBR contends that under Texas law, Altanmia's stipulations, representations, and admissions bar Altanmia from disputing the arbitrability of claims arising under Subcontract S0040. KBR also argues that Subcontract S0040 does not clearly express the parties' intent to submit claims arising under that Subcontract to binding arbitration. KBR points out that under Subcontract S0040, the parties agreed only to "resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures," and that "ADR procedures recommended by the Center for Public Resources . . . will be *considered* for this purpose." (Docket Entry No. 63 at 15). KBR emphasizes that

12

ADR procedures offered through the CPR "include various alternatives such as 'negotiation, mediation, and arbitration'" and do not require arbitration.  (*Id.* at 15).  Subcontract S0040 states that pursuing ADR procedures is a "prerequisite to the filing of any litigation against [KBR]"; KBR argues that this language "allows the parties to resolve their dispute through negotiation, mediation or arbitration *if they both agree to do so*."  ((Docket Entry No. 63, Ex. B, § 8.2.4).  KBR also argues that *McKee* and other cases on which Altanmia relies are distinguishable because they do not address whether parties have a valid arbitration agreement but instead examine whether parties who agreed to arbitrate also agreed that the arbitration would be binding and preclude future litigation.  KBR points out that the *Storm Reconstruction* case involved another Kellogg, Brown and Root entity represented by different counsel in an unrelated lawsuit.  (Docket Entry No. 65 at 2–4).  KBR emphasizes that the *Storm Reconstruction* court independently reached the same result as this court and held that the dispute resolution provision did not express the parties' intent to submit disputes to binding arbitration.

KBR also argues that the arbitration agreement in Subcontract S00164 does not govern claims arising under Subcontract S0040.  KBR points out that Altanmia conceded in statements to this court that Subcontracts S0040, S0138, and S00164 are three different contracts and that the dispute resolution provision in Subcontract S0040 controls whether the vehicle-reimbursement claims in dispute in this litigation, which arise under Subcontract S0040, are arbitrable.  KBR also emphasizes that Subcontract S0040 required any modifications to be in writing.  The parties agreed to eleven written "change orders" to

13

modify the Subcontract's terms.  Subcontract S0040 is dated May 18, 2003; Subcontract

S00164 is dated November 5, 2003.  (Docket Entry No. 63, Ex. B; Ex. D).  KBR points out

that Altanmia executed a change order for Subcontract S0040 on April 19, 2004 stating that

"[t]he terms and conditions forming the original subcontract and any subsequent change

orders not specifically changed herein remain the same and in full force and effect."  (*Id.*, Ex.

K).  KBR also provides documentation of a March 16, 2005 "Close Out Change Order" for

Subcontract S0040, which also stated that the Subcontract's original terms and conditions

remain in effect and affirmed that Altanmia's responsibilities under that Subcontract "remain

unchanged as a result of this Close Out Change Order."  (*Id.*, Ex. L).  KBR further notes that

Altanmia submitted a "close-out affidavit" to warrant its performance and request payment

under Subcontract S0040 on February 19, 2005, and that separate close-out affidavits were

issued for Subcontracts S0138 and S00164.  (*Id.*, Ex. M, Ex. N).  After signing these close-

out affidavits, Altanmia submitted a demand letter to KBR that enumerated claims arising

under Subcontract S0040.  (*Id.*, Ex. O).  KBR argues that this evidence shows that Altanmia

understood Subcontracts S0040, S0138, and S00164 to be three different contracts.

Both parties accuse each other of taking inconsistent positions and that the

inconsistencies either preclude the other's current arguments or waive the right to assert

them.  Altanmia argues that another KBR entity, represented by different counsel in another

case dealing with an unrelated subcontract with a third party, argued that the General

Conditions Document's dispute resolution provision was sufficient to compel arbitration.

*See Storm Reconstruction Servs.*, 2007 WL 3124559.  KBR argues that Altanmia has

14

stipulated and represented to this court on multiple occasions that it does not seek to arbitrate claims arising under Subcontract S0040, but now seeks to compel arbitration of such claims. This court addresses the arbitrability argument on the merits rather than the basis of the parties' changes in litigation positions.   The waiver and estoppel arguments are not addressed.

### B.   The Dispute Resolution Provision in Subcontract S0040: Alternative Dispute Resolution v. Binding Arbitration

Altanmia's argument that this alternative dispute resolution provision is a binding arbitration agreement is not persuasive.   The Subcontract S0040 General Conditions Document alternative dispute resolution provision states as follows:

> 8.2.3 In the event that the Subcontractor is dissatisfied with the final decision of the General Contractor [as to the processing of a claim] and the parties are unable to resolve their differences through negotiation, the parties will attempt in good faith to resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures.   ADR procedures recommended by the Center for Public Resources, including procedures for Jobsite ADR, will be considered for this purpose.   To the extent practicable, all disputes will be resolved during the progress of the Sublet Work.

(Docket Entry No. 63, Ex. B).   The General Conditions Document also states:

> 8.2.4 The parties desire to resolve any disputes arising out of this Subcontract amicably and without litigation and agree that the foregoing procedural steps [for internal claims processing by KBR and ADR] and the associated time limits are important to that end.   Accordingly, Subcontractor agrees that the filing of a claim within the time prescribed and the pursuit of the procedures outlined above in a timely manner shall be a prerequisite to the filing of any litigation against General Contractor, Owner, or Engineer, and that the failure to do so

shall constitute a waiver of any legal rights with respect to the
subject matter of the claim.

(*Id.*, Ex. B).  Altanmia does not dispute that the General Conditions Document is part of

Subcontract S0040.  (*Id.*, Ex. B).  The dispute resolution provision does not state that the

parties will resolve disputes through binding arbitration.  Rather, it states that the parties will

attempt to resolve disputes under "agreed Alternate Dispute Resolution procedures . . .

recommended by the Center for Public Resources." (*Id.*, Ex. B, § 8.2.3).  As KBR points out,

ADR procedures recommended by the CPR are not limited to binding arbitration, but also

include negotiation and mediation.  (*Id.* at 15; *id.*, Ex. P).

Altanmia argues that CPR rules provide for negotiation and mediation only "in the

context of arbitration," such that by referring to dispute resolution under CPR rules, the

dispute resolution provision calls for binding arbitration.  (Docket Entry No. 64 at 29).  This

assertion does not accurately represent the services that the CPR provides.  Although the

CPR's arbitration procedures allow for mediation in the context of arbitration, the CPR also

provides a separate procedure for mediation, "the most widely used ADR process," which

"should not be confused with binding arbitration or private adjudication."  *See* CPR

Mediation Procedure, http://www.cpradr.org/med_intro.asp?M=9.2.10.   The CPR also

provides procedures for minitrials.   *See* CPR Clauses, Rules & Procedures,

http://www.cpradr.org/mini_procdr.asp?M=9.2.12.3. The provision does not specify which

alternative dispute resolution procedure the parties must use.  By its terms, the provision

*allows* the parties to agree on binding arbitration but does not *require* them to do so.  The

16

provision does not express the parties' intent to submit disputes under Subcontract S0040 to binding arbitration.

Altanmia argues that "KBR's representations about the contents of Subcontract S0040 were false" and that this court erred in entering a preliminary injunction order without conducting an evidentiary hearing to determine the contents of the Subcontract. (Docket Entry No. 64 at 6). Despite Altanmia's arguments that this court's preliminary injunction order was based on an "incorrect" assumption "that the documents attached to KBR's Injunction Application are an accurate representation of Subcontract S0040," Altanmia agrees that the dispute resolution provision found in the General Conditions Document and interpreted in this court's preliminary injunction order is the provision that controls the arbitrability of claims arising under Subcontract S0040. (*Id.* at 10). Altanmia acknowledges that "it is undisputed that Subcontract S0040's General Conditions Document contains a dispute resolution provision requiring the parties to attempt to resolve disputes under 'agreed Alternate Dispute Resolution (ADR) procedures." (Docket Entry No. 60 at 11). Altanmia's argument that Subcontract S0040 requires binding arbitration relies on the dispute resolution provision contained in the General Conditions Document that is an undisputed part of that Subcontract. (*Id.* at 17–21; Docket Entry No. 64 at 28–29). This court's preliminary injunction preventing Altanmia from arbitrating claims related to Subcontract S0040 was based on the dispute resolution provision which the parties agreed to. Altanmia disputes the legal effect of the dispute resolution provision but not whether it applied.

The cases Altanmia relies on to argue that Subcontract S0040's alternative dispute

17

resolution provision constitutes a binding arbitration agreement are readily distinguishable. Altanmia cites *McKee*, 45 F.3d 981, for the proposition that "a contract's requirement of arbitration as a prerequisite to litigation requires 'binding' arbitration where the contract calls for arbitration pursuant to procedures stating that they will result in the issuance of a 'binding' award."  In *McKee*, the parties signed an agreement with the following dispute resolution provision:

> Should the Builder or Homebuyer(s) disagree with the Insurer's decision to deny the claim as recommended by the Service, the contesting party shall call for conciliation with the Service or an arbitration to be conducted by the American Arbitration Association (A.A.A.), or other mutually agreeable arbitration service at the Service's expense. . . . The conciliation and/or arbitration process will be conducted in accordance with the warranty conditions described herein and the rules and regulations of the A.A.A. or other mutually agreeable arbitration service. The dispute settlement process shall precede any litigation attempted by either party on items that are specifically included in this warranty.

45 F.3d at 983.  The homebuyers, dissatisfied with the insurer's denial of their claim, "requested through their attorney that the matter be submitted to arbitration with the American Arbitration Association ("AAA") as provided in the warranty booklet." *Id.* at 982. The issue before the court was whether the arbitrator's decision was binding on the homebuyers.  The Fifth Circuit found that because AAA arbitration rules call for binding arbitration, the homebuyers were bound by the arbitrator's decision notwithstanding language in the homeowners' contract stating that the parties must go through a dispute settlement process before attempting litigation.  Because "it is undisputed that the [parties' agreement]

18

provided that AAA rules would govern if the dispute were submitted to AAA arbitration"—which it was—the arbitration was binding under AAA rules.  *Id.* at 983.

In contrast, Altanmia and KBR have not agreed they would select binding arbitration from the menu of alternative dispute resolution procedures available under the "Alternate Dispute Resolution procedures . . . recommended by the Center for Public Resources." (Docket Entry No. 63, Ex. B, § 8.2)  Altanmia and KBR have not agreed to arbitrate claims arising under Subcontract S0040.  The issue in this case is not whether an arbitrator's final decision on the parties' disputes arising under a contract is binding, but whether the parties agreed to submit disputes under that contract to binding arbitration in the first place.  *McKee*'s holding that "arbitration is binding where the rules under which the arbitration is conducted call for binding arbitration" is not applicable to this case.  *McKee*, 45 F.3d at 983.

The other cases that Altanmia cites are similarly inapplicable because the dispute resolution provisions in those cases required a specific form of dispute resolution.  *See, e.g.*, *Provision Interactive Techs., Inc. v. Betacorp Mgmt., Inc.*, No. 03-06-00692-CV, 2008 WL 536688, at *1 (Tex. App.—Austin Feb. 28, 2008, no pet.) ("The contracting Parties shall attempt to settle the questions at dispute, if any, through direct negotiations.  If the direct negotiations remain unsuccessful, prior to the commencement of filing any legal actions against the other, the Parties stipulate to employ Arbitration."); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 244–45 (Tex. App.—San Antonio 2006, no pet.) ("The 'Resolution Program' established a procedure for resolving disputes arising from the employer–employee relationship through the use of arbitration," and the employee "did not

deny the existence of a written arbitration policy."); *In re Cartwright*, 104 S.W.3d 706, 711 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("Any claim or controversy . . . that cannot be resolved by direct negotiation will be mediated . . . .  If the parties cannot resolve the matter through mediation, then JAMES PATRICK SMITH shall be the arbitrator to arbitrate all disputes."); *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 220 (Tex. App.—Houston [1st Dist.] 1997, no pet.) ("[A]ll parties hereby agree that the dispute shall be referred to arbitration by an arbitrator appointed by the senior United States District Judge for the Southern District of Texas."); *see also McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 827 (2d Cir. 1988) ("[T]he Company and the Owner shall appoint an independent tax counsel to resolve the dispute and, if the parties cannot agree to the appointment of such counsel, said independent tax counsel shall be appointed by the American Arbitration Association."); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263 (7th Cir. 1976) ("Any dispute arising from this Contract . . . shall be submitted to arbitration on request of either party.").  By contrast, Subcontract S0040's alternative dispute resolution provision does not state that the parties *will* arbitrate their disputes or require any particular ADR procedure to resolve disputes arising under that Subcontract.  Rather, Subcontract S0040 states that the parties will use procedures recommended by the CPR to resolve their disputes before resorting to litigation.  The record shows that the CPR recommends a number of procedures besides binding arbitration.  Subcontract S0040 does not clearly express the parties' intent to submit disputes arising under that Subcontract to binding arbitration.

### C.    The Relationship of Subcontract S00164 to Subcontract S0040

Altanmia's argument that the arbitration provision in Subcontract S00164 controls the resolution of claims related to Subcontract S0040 is also unpersuasive.  Evidence of the parties' dealings shows that both parties considered Subcontract S0040 to be separate and independent from Subcontract S00164.  Subcontract S0040, which has a May 18, 2003 effective date, states as follows:

> No change shall be made by Subcontractor in the Sublet Work or the time or manner of its performance, without prior written instructions from the General Contractor in a written Change Order specifying the change in plans, specifications, procedures, time, sequence, or other requirements of this Subcontract, and specifying whether there is to be an adjustment in the compensation or time for performance and how any such adjustment shall be determined."

(Docket Entry No. 63, Ex. B, § 8.1.1).  KBR asserts, and Altanmia does not dispute, that the parties executed a total of eleven written change orders for Subcontract S0040.  Two of these postdate Subcontract S00164, which has a November 5, 2003 effective date.  (Docket Entry No. 60, Ex. D).  The two change orders that postdate Subcontract S00164 are dated March 31, 2004 and March 2, 2005.  Both state that "the terms and conditions forming the original subcontract [identified by the Change Orders as Subcontract number GU67-KJS-S0040] and any subsequent change orders not specifically changed herein remain the same and in full force and effect." (Docket Entry No. 63, Exs. K, L).

In addition, the record shows that Altanmia submitted a close-out affidavit for Subcontract S0040 on February 19, 2005.  This close-out affidavit stated that Altanmia had

paid all bills for "labor, material, re-sublet work, equipment rental, taxes, insurance, and all other charges arising in connection with the performance of the Sublet Work" and that Altanmia was entitled to have KBR pay under the Subcontract. (*Id.*, Ex. M). Altanmia submitted separate close-out affidavits for Subcontracts S0138 and S00164 on March 16, 2003. (*Id.*, Ex. N). The record shows that the parties treated Subcontracts S0040, S0138, and S00164 as separate and independent contracts. The "terms and conditions" of Subcontract S0040 "remain the same and in full force and effect" after Subcontract S00164 was executed. (*Id.*, Exs. K, L).

The evidence does not support Altanmia's argument that Subcontract S00164 "supersedes" Subcontract S0040. Nor does the evidence support Altanmia's argument that vehicle claims arising under Subcontract S0040 "relate to" Subcontract S00164 and are therefore subject to Subcontract S00164's arbitration provision.

## IV.    Conclusion

Altanmia has failed to show that the parties agreed to submit vehicle-reimbursement claims arising under Subcontract S0040 to binding arbitration. Based on a careful examination of the legal effect of the dispute resolution provision that the parties agreed to, and without relying on the arguments of waiver or estoppel that the parties exchange, this court concludes that because the dispute resolution provision in Subcontract S0040 does not clearly express the parties' intent to arbitrate claims arising under that Subcontract, Altanmia's motion to compel arbitration must be denied.

Altanmia's motion to stay the litigation pending the arbitration is also denied.

SIGNED on April 17, 2008, at Houston, Texas.

_Lee H. Rosenthal_

Lee H. Rosenthal
United States District Judge