## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KELLOGG BROWN & ROOT INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-07-2684 |
| ALTANMIA COMMERCIAL MARKETING CO. W.L.L., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND OPINION

Kellogg Brown & Root International, Inc. ("KBR") and Altanmia Commercial Marketing Co. W.L.L. ("Altanmia") entered into a series of contracts under which Altanmia transported fuel from Kuwait to Iraq. This suit arises from Altanmia's reimbursement claims for vehicles lost and damaged in performing one of those contracts, Subcontract GU67-KJ5-S0040 ("Subcontract S0040").

KBR filed this suit on August 20, 2007 seeking to enjoin Altanmia from asserting its vehicle-reimbursement claims arising under Subcontract S0040 in the arbitration of claims arising under two other subcontracts, one identified as Subcontract RIO-JIK-S0138 and the other as Subcontract RIO-JIK-S00164 ("Subcontract S0138" and "Subcontract S00164"). KBR also sought a declaratory judgment that claims arising under Subcontract S0040 are not arbitrable and that KBR is not obligated to reimburse Altanmia for vehicle losses and damage resulting from the performance of Subcontract S0040. After a hearing, this court found that

Subcontract S0040 did "not clearly express the parties' intent to submit disputes under that Subcontract to binding arbitration," (Docket Entry No. 29 at 26, Docket Entry No. 50), and issued a preliminary injunction prohibiting Altanmia "from asserting claims related to Subcontract S0040 in the arbitration of claims arising under Subcontracts S0138 and S00164." Altanmia subsequently moved for an order compelling KBR to arbitrate the vehicle-reimbursement claims arising under Subcontract S0040, dissolving the preliminary injunction, and staying this litigation pending that arbitration. On April 17, 2008, this court denied Altanmia's motion. (Docket Entry No. 66).

KBR filed its first amended complaint on May 22, 2008. (Docket Entry No. 78). The amended complaint added a claim for a declaratory judgment that Altanmia's vehicle-reimbursement claims against KBR are time-barred and a breach of contract claim for Altanmia's alleged failure to indemnify KBR for the vehicle-reimbursement claims arising from Subcontract S0040. (*Id.*). On July 2, 2008, Altanmia answered the amended complaint and counterclaimed for breach of contract, quantum meruit, promissory estoppel, negligent misrepresentation, and breach of a contract to use alternative dispute resolution. (Docket Entry No. 81).

The following motions are pending:

- KBR has moved for summary judgment on its claim for a declaratory judgment that the vehicle-reimbursement claims arising under Subcontract S0040 are not arbitrable. KBR has also moved for summary judgment that it is entitled to a permanent injunction prohibiting Altanmia from asserting

claims arising under Subcontract S0040 in the arbitration of claims arising under Subcontracts S0138 and S00164.  KBR also seeks summary judgment that Altanmia has no right to recover on the vehicle-reimbursement claims arising under Subcontract S0040.  KBR also seeks summary judgment on its breach of contract claim for Altanmia's alleged failure to indemnify against claims arising under Subcontract S0040.  (Docket Entry No. 61).  Altanmia has responded, (Docket Entry No. 68), and KBR has replied and supplemented its reply, (Docket Entry Nos. 72, 84).

• Altanmia has moved to dismiss KBR's amended complaint, (Docket Entry No. 80).  Altanmia moves to dismiss KBR's claim for a declaratory judgment that the vehicle-reimbursement claims are time-barred, KBR's request for a temporary restraining order, and KBR's breach of contract claim.  (*Id.*).  KBR has responded, (Docket Entry No. 87), and Altanmia has replied, (Docket Entry No. 89).

• KBR has moved to dismiss Altanmia's counterclaims, or in the alternative, for summary judgment on Altanmia's counterclaims, (Docket Entry No. 86), and Altanmia has responded, (Docket Entry No. 88).

• KBR has moved for sanctions against Altanmia and its counsel, (Docket Entry No. 70), and Altanmia has replied, (Docket Entry No. 79).

Based on the pleadings; the motions, responses, and replies; the parties' submissions; and the applicable law, this court enters the following orders:

- KBR's motion for summary judgment is granted in part and denied in part. KBR's motion for a declaratory judgment that it is not obligated to compensate Altanmia for vehicle loss or damage resulting from the performance of Subcontract S0040 is granted. KBR's claims for a permanent injunction prohibiting Altanmia from submitting its vehicle-reimbursement claims arising under Subcontract S0040 in the arbitration of claims arising under Subcontracts S0138 and S00165, for a declaratory judgment that Altanmia's vehicle-reimbursement claims arising under Subcontract S0040 are not arbitrable, and for a declaratory judgment that the statute of limitations forecloses Altanmia's vehicle-reimbursement claims, are denied as moot. KBR's motion for summary judgment on its claim that Altanmia breached its contractual obligation to indemnify KBR is denied.

- Altanmia's motion to dismiss is granted in part and denied in part. Altanmia's motion to dismiss KBR's claim for breach of a contractual obligation to indemnify is granted. Altanmia's motions to dismiss KBR's claim for a declaratory judgment that Altanmia's vehicle-reimbursement claims are time-barred and to dismiss KBR's application for a temporary restraining order are denied as moot.

- KBR's motion for summary judgment on Altanmia's counterclaims is granted.

- KBR's motion for sanctions is denied.

The reasons for these rulings are set out in detail below.

## I.       Background

In 2003, the United States Army Corps of Engineers (USACE) awarded KBR a contract to provide services for the USACE's "Restore Iraqi Oil" (RIO) program.  The services included transporting fuel from Kuwait to Iraq.  On May 3, 2003, KBR began verbally soliciting bids from various subcontractors.  By May 5, 2003, KBR had received verbal bids from several Kuwaiti fuel suppliers, including Altanmia.  KBR decided to accept Altanmia's bid and on May 5, 2003 issued Altanmia a notice to proceed.  The notice directed Altanmia to purchase certain quantities of octane gasoline and liquid petroleum gas. According to KBR, swift performance was critical because the RIO fuel-delivery program was intended to prevent civil unrest resulting from the extremely low Iraqi fuel supply.[1]

KBR received information from the USACE about the scope of its fuel needs for the RIO program before a written contract between KBR and Altanmia was executed.  KBR issued Altanmia three purchase orders for specific quantities of fuel.  On May 7, 2003, Altanmia began executing these purchase orders.

Also on May 7, 2003, KBR's Procurement Manager, Chris Niakaros, issued Altanmia a written request for proposal to confirm KBR's May 3 verbal solicitation.  The written request for proposal included several attachments, including KBR's "Subcontract General Terms and Conditions GC-1 through GC-8." (Docket Entry No. 61, Ex. B).  The request for

---

[1]  Statement by Alfred Neffgen, Chief Operating Officer, KBR Government Operations, Americas Region, Before the Committee on Government Reform, U.S. House of Representatives, at 12 ("Under extraordinary difficult circumstances and with only hours of advance planning time, KBR also developed a massive fuel importation program to prevent civil unrest and disorder after fuel stocks for the Iraqi people had dwindled dangerously low.").

proposal stated in pertinent part as follows:

> An example of the selected bidder's subcontract has been
> enclosed. The terms, conditions and requirements will remain
> basically the same for the actual subcontract.  Bidder should
> read it carefully. . . . Proposals shall be for the exact conditions
> set forth in this [request for proposal] and attachments thereto.
> Any exceptions taken by the bidder should be submitted in
> writing with the proposal.  We STRONGLY encourage all
> exceptions to be discussed with the Subcontract Administrator
> before submitting proposals. . . . Each bidder has been provided
> with a complete set of contract documents. . . .  Exceptions or
> qualifications to the [request for proposal] documents are
> STRONGLY discouraged and will most likely result in
> disqualifying the proposal from consideration.

(*Id.*) (emphasis in original).  By May 12, 2003, KBR had received three written bids from

Kuwaiti fuel suppliers in response to the request for proposal.  The written solicitation

process confirmed that Altanmia was the low-priced qualified bidder.

KBR and Altanmia began negotiating a written contract for procuring fuel and for

fuel-delivery services.  The contract negotiation and execution were handled by KBR's

Procurement Manager, Niakaros, and Altanmia's Sales Manager, Jay Modad.  The

arrangement initially contemplated that Altanmia would provide "turnkey" fuel delivery to

Iraq, FOB Baghdad, with all costs built into the price Altanmia would be paid under the

contract.[2]  (Docket Entry No. 61, Ex. B).  As Altanmia began executing the three purchase

orders for fuel, logistical and security issues arose that increased the transportation costs

beyond what was anticipated during the bid-solicitation process.  (*Id.*).  Fuel convoys were

---

[2] "Turnkey" in this context meant the procurement and delivery of fuel to Baghdad for one price.
(Docket Entry No. 61, Ex. B).

being delayed and cancelled due to a lack of U.S. Army security. Trucks loaded with fuel often waited at the border for a convoy escort. Many of the trucks and tankers Altanmia was using were being damaged, disabled, or stolen. (*Id.*). According to Niakaros, the vehicle damage in these initial fuel deliveries was documented by Altanmia and verified by KBR. (*Id.*).

On May 15, 2003, representatives from KBR, Altanmia, and the USACE met to discuss the logistical and security issues as well as the price structure for the fuel-delivery subcontract. (*Id.*). KBR was concerned that Altanmia would refuse to perform or that Altanmia's owner-operated trucks would stop making deliveries. (Docket Entry No. 61, at 6). Modad asked for an increase in the contract payment to mitigate Altanmia's additional operating expenses, from the logistical and security problems, including lost and damaged vehicles. (*Id.*, Ex. B). Modad explained that an increase in the contract price was also needed to pay drivers a premium for traveling into Iraq because of the increased risk of violence. KBR agreed that these were circumstances not foreseen during the bidding process.

To address KBR's concerns about contract performance and Altanmia's concerns about increased cost and risk, KBR decided to implement a pricing structure that separated payment for fuel from payment for delivery. Under this arrangement, KBR would purchase fuel incrementally via purchase orders. The price of these fuel purchases would be added to a monthly rental fee for each rented delivery truck. The monthly rental fee included the price for the driver, truck fuel, maintenance, a recovery vehicle, and an English-speaking

7

supervisor in the convoy.  The monthly vehicle rental fee was initially set at 7,200 Kuwaiti

Dinar (KD), based on four trips per month.  Further negotiations led to an agreement to

increase Altanmia's monthly truck-rental fees by 550 KD.  The 550 KD increase was "based

upon the increase in cost and risk of performance due to hostilities manifested in loss and

damage to vehicles, driver labor costs, as well as the loss of potential additional revenues

offered by the initial price structure of FOB Baghdad."  (Docket Entry No. 61, Ex. B).

The parties executed Subcontract S0040 on May 18, 2003.  The written documents

comprising Subcontract S0040 were a "Short Form Subcontract" outlining the general terms,

and four attachments: the General Conditions Document; the Subcontract Special

Conditions/Requirements; a Backcharge Agreement and Sample Backcharge Form; and an

Affidavit for Subcontractor.  (Docket Entry No. 61, Ex. A).  The General Conditions

contained a risk-of-loss provision that stated in relevant part:

> [E]xcept as otherwise provided in the Subcontract terms or the
> special conditions, [Altanmia] shall bear, without right of
> reimbursement, the full risk of loss or damage to the Sublet
> Work and all labor, materials, plant equipment, supplies, and
> other things, including but not limited to, loss or damages
> arising as a result of fault or negligence (whether active, passive,
> sole or concurrent) or strict liability of General Contractor or
> Owner.

(Docket Entry No. 61, Ex. A at § 6.1.2).

The General Conditions of Subcontract S0040 included a choice-of-law provision

stating that the "Agreement shall be construed and governed by the laws of the State of

Texas."  (*Id.*, Ex. A at § 9.2).  It also included a provision stating that if any dispute could not

8

be resolved through negotiation, the parties would "attempt in good faith to resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures." (*Id.*, Ex. A at § 8.2). This provision continued:

> The parties desire to resolve any disputes arising out of this Subcontract amicably and without litigation . . . . Accordingly, [Altanmia] agrees that the filing of a claim [with Brown & Root Services's project manager] within the time prescribed and the pursuit of the procedures outlined above in a timely manner shall be a prerequisite to the filing of any litigation against [Brown & Root Services], Owner or Engineer, and that the failure to do so shall constitute a waiver of any legal rights with respect to the subject matter of the claim.

(*Id.*, Ex. A at § 8.2). The General Conditions also contained an integration clause stating that "[t]he entire agreement between [KBR and Altanmia] and all negotiations proposals, and representations have been integrated into and superseded by [Subcontract S0040]." (*Id.*, Ex. A at § 9.6). The same section also stated that Subcontract S0040 "may be amended only by a document in writing executed with equal formality." (*Id.*, Ex. A at § 9.6).

The Short Form Subcontract covered the rental of 220 fuel tankers. The monthly rental period was "between 15 May through 25 June, 2003 for a consecutive 30 day period at Subcontractor's discretion." (*Id.*). This period included ten days for Altanmia to mobilize the fuel tankers.

Subcontract S0040 called for the parties to use written "change orders" to make changes to the work, pricing, or manner of performance. (*Id.*, Ex. A at § 8.1.1). The General Conditions stated:

> No change shall be made by Subcontractor in the Sublet Work

9

> or the time or manner of its performance, without prior written instructions from the General Contractor in a written Change Order specifying the change in plans, specifications, procedures, time, sequence, or other requirements of this Subcontract, and specifying whether there is to be an adjustment in the compensation or time for performance and how any such adjustment shall be determined.

(*Id.*).  During Subcontract S0040's term, the parties executed eleven change orders.  (Docket Entry No. 61, Exs. A-1 to A-11).  Some change orders – including Nos. 1, 3, 5, 6, 8, and 9 – increased the time of performance, typically in 30-day increments.  The last change order extending the time of performance, No. 9, was executed on October 1, 2003 and provided for a 30-day extension under Subcontract S0040.  (Docket Entry No. 61, Ex. A-9).  Many of the eleven orders also changed the number of fuel trucks operating under Subcontract S0040 as well as the fuel-delivery requirements.  All eleven change orders stated that "the terms and conditions forming the original subcontract [S0040] and any subsequent change orders not specifically changed herein remain the same and in full force and effect."  (Docket Entry No. 61, Exs. A-1 to A-11).

The Short Form Subcontract stated that after the "[f]inal invoice [is] submitted for sublet work under this Subcontract, Subcontractor shall submit an 'Affidavit for Subcontractor.'"  (Docket Entry No. 61, Ex. A).  Altanmia submitted a "close-out affidavit" dated February 19, 2005 to warrant its performance and request payment under Subcontract S0040.  (Docket Entry No. 63, Ex. M).  This Affidavit for Subcontractor stated that Altanmia:

> [a]grees to release, relieve and discharge [KBR] from all claims

10

> for payment (other than unpaid retainage, if any) for work
> performed under or in connection with the Subcontract or any
> change order or other modification thereto, except as listed
> below.

(*Id.*).  On March 16, 2005, Altanmia submitted separate close-out affidavits for Subcontracts

S0138 and S0164.  (Docket Entry No. 63, Ex. N).  All three affidavits contained this same

release provision.  In all three close-out affidavits, Altanmia stated that "Exceptions" to these

terms "[a]re as prescribed in Altanmia Commercial Marketing Co. faxed letter dated 3.3.2005

ref:JM/51/2005-copy attached hereto."  (*Id.*, Exs. M, N).  This sentence on "exceptions" to

the release was not in the close-out affidavit for Subcontract S0040 that Modad signed and

dated February 19, 2005 but was added later.[3]

The parties formally closed out Subcontract S0040 with change order No. 11 dated

March 2, 2005.   (Docket Entry No. 61, Ex. A-11).  That was approximately 16 months after

Altanmia had completed deliveries under Subcontract S0040.  The close-out change order

stated:

> All Subcontractor claims, if any, have been submitted and
> resolved and no further claims will be submitted. . . . [Altanmia],
> by signature below, affirms that this Change Order Eleven (11)
> and receipt of payment still due as noted in paragraph 3.3 herein,
> disposes of all past, present, and future claims and demands for
> compensation   under   this   Subcontract.     [Altanmia's]
> responsibilities under the Subcontract remain unchanged as a

---

[3] A document signed and dated February 19, 2005 could not refer to a letter faxed on March 3, 2005 discussing a March 2 phone call.  The sentence on "exceptions" is in a different font and typeface than the rest of the close-out affidavit for Subcontract S0040.

> result of this Close Out Change Order with regards to
> [Altanmia's] warranty obligations defined in the Subcontract
> Terms.

(*Id.*).  This change order was signed by KBR and Altanmia representatives on March 16, 2005.  (*Id.*).

The "faxed letter dated 3.3.2005" referred to in Altanmia's close-out affidavits concerned exclusions to the affidavits and other close-out documents for Subcontracts S0040, S0076, S0138, and S0164.  (Docket Entry No. 68, Ex. 3, Affidavit of David Waddell, Ex. A). The letter, addressed to Boyd Bishop of KBR, noted that Bishop and Harvey Shackley of Altanmia had discussed these exclusions on March 2, 2005.  (*Id.*).  The letter further stated:

> As you are aware we have already presented various contractual
> claims, pursuant to the above-referenced sub-contracts to KBR
> Legal dept. in Kalifa.  All claims for material damage loss and
> business interruption previously submitted, including
> amendments and resubmissions, are hereby excluded from the
> final account valuations of the Affidavits and close out
> documentation referenced above.

(*Id.*).  The letter included a summary of Altanmia's claims under Subcontracts S0040, S0138, and S164.  (*Id.*).

Altanmia does not dispute that Section 6.1.2 of the General Conditions – the risk-of-loss provision – was part of Subcontract S0040 as written and signed by the parties. Altanmia acknowledges that under this provision, Altanmia bore the "full risk of loss or damage" to all equipment, supplies, and "other things" arising from the performance of Subcontract S0040.  But Altanmia contends that Subcontract S0040 was orally modified during the summer of 2003 to provide that KBR – not Altanmia – would bear the risk of loss

for damaged or destroyed vehicles.  (Docket Entry No. 68, at 9).

Altanmia argues that this oral modification to the written risk-of-loss provision in Subcontract S0040 is shown by several documents relating to KBR's review of Altanmia's vehicle-reimbursement claims.  One document is the February 19, 2005 Affidavit for Subcontractor in which Altanmia stated that it was excluding vehicle-reimbursement claims under Subcontract S0040.  Altanmia also relies on documents relating to Altanmia's vehicle-reimbursement claims under Subcontract S0040 sent by David Gallaher, a KBR claims adjuster, and David Brenner, counsel for KBR's Claims Group.  On June 4 and 9, 2003, Altanmia submitted three "Incident Report & Claim" forms addressed to KBR's Procurement Manager.  (Docket Entry No. 75, Ex. C).  These claims were for damaged and stolen trucks and tanker trailers.  (*Id.*).  Altanmia asserts that Gallaher countersigned these forms.  On July 29, 2003, Gallaher sent Modad an e-mail stating that he was "aware of a number of claims besides the original four that Al-Tanmia submitted to us for resolution which are outstanding."  In the e-mail, Gallaher asked Altanmia to "finalize the incident reports for any additional claims that you will have and submit them to us."  (Docket Entry No. 68, Ex. 2B, Deposition of Mark Lowes, KBR Vice-President of Litigation, Ex. 4).  On December 6, 2004, Brenner sent Modad a letter about Altanmia's claims for 233 lost vehicles.  The claims were under Subcontracts S0164, S0138, and S0040.  (*Id.*, Ex. 2B, Lowes Deposition, Ex. 11).  In the letter, Brenner stated that to receive compensation for the 233 lost trucks, Altanmia had to show that it was entitled by submitting a statement of facts with supporting documentation showing that the claimed amount was reasonable.  (*Id.*).  Brenner attached to

the letter a subcontractor claim form for Altanmia to complete for each vehicle. Brenner explained that "[t]he Claims Group will examine your claim, contact you for clarification if needed and if entitlement is established, determine in consultation with you the appropriate amount of compensation." (*Id.*).

KBR and Altanmia had entered into Subcontracts S0138 and S00164, respectively dated October 28, 2003 and November 5, 2003, as the term for performance under Subcontract S0040 drew to a close. These separate Subcontracts were for the rental of benzene and kerosene tanker trailers. Both of these Subcontracts provided that under certain circumstances, KBR would reimburse Altanmia for assets lost, stolen, or damaged in Iraq. Both of these Subcontracts also contained provisions stating that any disputes "arising under or related to" these Subcontracts would be resolved in "binding arbitration in accordance with the rules, regulations, and procedures of the American Arbitration Association." (Docket Entry No. 13, Ex. C at 003423, Ex. D at 003284).

On November 23, 2005, Brenner at KBR sent a letter to Shackley at Altanmia. The letter concerned Altanmia's 53 vehicle-reimbursement claims made under Subcontract S0040. (Docket Entry No. 68, Ex. 2B, Lowes Deposition, Ex. 12). Brenner stated that he had reviewed Subcontract S0040 and the materials Altanmia submitted and had decided to "conditionally accept" Altanmia's claims "for resolution by KBR." (*Id.*). Brenner stated that the acceptance for resolution was conditional because nearly all the documents submitted were generated by Altanmia and there was almost no third-party documentation verifying the claims. (*Id.*).

In his deposition, Mark E. Lowes, KBR's Vice-President of Litigation and a Rule 30(b)(6) witness, stated that Brenner had improperly interpreted Subcontract S0040 by ignoring the fact that it had a different risk-of-loss provision than Subcontracts S0138 and S0164.  (*Id.*, Ex. 2A, Lowes Deposition at 109:5-15).  According to Lowes, Subcontract S0040 put the risk of loss on Altanmia, while Subcontracts S0138 and S0164 made KBR responsible for losses, subject to certain conditions.  Lowes acknowledged that Brenner was outside counsel for KBR and that "any approval of an ultimate settlement would have had to go" through Lowes or his predecessor.  (*Id.* at 109:16-21).

On May 9, 2007, Altanmia sued KBR in federal district court in the Southern District of Texas.  Altanmia alleged that KBR's refusal to pay the vehicle-reimbursement claims under Subcontract S0040 was a breach of contract.  Altanmia also asserted a promissory estoppel claim.  On the same date, Altanmia initiated arbitration proceedings for its claims arising under Subcontracts S0138 and S00164 (the "Arbitration").  On August 6, 2007, Altanmia dismissed without prejudice its federal lawsuit against KBR, before serving it with process.

The Arbitration hearing on Altanmia's claims under Subcontracts S0138 and S00164 was scheduled to begin on July 14, 2008 in The Hague.  In discovery conducted before that Arbitration hearing, Altanmia produced documents relating to its vehicle-reimbursement claims arising under Subcontract S0040.  KBR asked Altanmia to withdraw the documents because those claims did not relate to the subject matter of the Arbitration, the disputed claims under Subcontracts S0138 and S00164.  Altanmia refused.  KBR then filed this

lawsuit, seeking a preliminary and permanent injunction to prevent Altanmia from submitting claims arising under Subcontract S0040 in the Arbitration of the claims arising under Subcontracts S0138 and S00164.

This court held a hearing on KBR's injunction application and the parties submitted extensive briefs and voluminous materials. The issue was whether Altanmia could require submission of the vehicle-reimbursement claims arising under Subcontract S0040 in the Arbitration of the claims arising under the two other Subcontracts. In its argument at the hearing and in its briefs, Altanmia did not dispute that Subcontract S0040 included the General Conditions Document or that the dispute-resolution provision in the General Conditions Document controlled.

On November 21, 2007, this court issued a lengthy opinion interpreting the dispute-resolution provision in the General Conditions Document of Subcontract S0040, concluding that the provision "does not clearly express the parties' intent to submit disputes under that Subcontract to binding arbitration." (Docket Entry No. 29 at 26). The dispute-resolution provision in Subcontract S0040 stated only that "the parties will attempt in good faith to resolve the dispute under agreed Alternate Dispute Resolution (ADR) procedures . . . recommended by the Center for Public Resources." (Docket Entry No. 61, Ex. A at § 8.2.3). The ADR procedures recommended by the Center for Public Resources were not limited to binding arbitration but include other methods that are neither arbitration nor binding. The dispute-resolution provision in Subcontract S0040 allowed litigation if dispute-resolution methods failed. Unlike the arbitration clauses in Subcontracts S0138 and S00164, which

16

KBR agreed required binding arbitration, the dispute-resolution provision in S0040 "*allows*
the parties to agree on binding arbitration but does not *require* them to do so, as long as they
attempt some form of ADR procedure before resorting to litigation." (Docket Entry No. 29
at 27). It did not "clearly appear that the intention of the parties was to submit their dispute
to the arbitrators and to be bound by that decision." (Docket Entry 29 at 28). This court
granted KBR's application for a preliminary injunction to prevent Altanmia from arbitrating
claims arising under Subcontract S0040 in the Arbitration of claims arising under
Subcontracts S00164 and S0138.

Altanmia contested this court's interpretation while insisting that it did not intend to
include any claims arising under Subcontract S0040 in the Arbitration of claims arising under
the other two Subcontracts. On January 3, 2008, Altanmia filed a stipulation in this case, as
follows:

> Defendant Altanmia Commercial Marketing Co. W.L.L.
> ("Altanmia") stipulates that in the international arbitration
> proceeding styled *Altanmia Commercial Marketing Company
> W.L.L. v. Kellogg Brown & Root International, Inc.*, No. 50 181
> T 00189 07, International Centre for Dispute Resolution
> (Hunter, Arb.), Altanmia will not attempt to arbitrate or obtain
> a recovery on vehicle reimbursement claims arising under a
> subcontract identified as Subcontract No. GU67-KJ5-S-0040.

(Docket Entry No. 40 at 1). On January 14, 2008, after a hearing, this court entered a
preliminary injunction order tracking Altanmia's stipulation. The order enjoined Altanmia
"from asserting claims related to Subcontract S0040 in the Arbitration of claims arising under
Subcontracts S0138 and S00164." (Docket Entry No. 50 at 2).

Altanmia subsequently moved to compel KBR to arbitrate the vehicle-reimbursement claims arising under Subcontract S0040 in the Arbitration of the claims arising under the other two Subcontracts, to dissolve the preliminary injunction order, and to stay this litigation pending the Arbitration.  Based on the dispute-resolution provision of Subcontract S0040, this court denied Altanmia's motion on April 17, 2008.  (Docket Entry No. 66).

The parties have filed a number of motions, responses, and replies.  The filings raise three sets of issues.  The first is whether KBR must arbitrate Altanmia's vehicle-reimbursement claims arising under Subcontract S0040.  The second is whether, based on the undisputed facts in the record Altanmia has the right as a matter of law to recover on those claims or whether they are foreclosed by Subcontract S0040.  Altanmia's primary argument is that  there is at a minimum a fact issue as to whether the parties orally modified the written provision placing the risk of equipment loss and damage on Altanmia to shift that risk to KBR.  The third set of issues is KBR's motion for sanctions.  The parties have submitted extensive evidence in the form of documents, affidavits, and deposition testimony, and numerous briefs.

## II.    The Legal Standards

### A.    Dismissal Under Rules 12(b)(1) and 12(b)(6)

Altanmia moves to dismiss KBR's allegations that limitations bars the vehicle-reimbursement claims under Subcontract S0040, that KBR is entitled to a TRO to prevent Altanmia from arbitrating those claims, and that KBR is entitled to recover its fees and costs incurred in defending the claims because Altanmia breached its contractual obligation to

indemnify KBR against "all claims."  Altanmia asserts a lack of subject-matter jurisdiction over KBR's claim for breach of the contractual indemnity obligation and a failure to state a claim on which relief can be granted as to KBR's remaining causes of action.

### 1.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of the plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark*, 798 F.2d at 741.  When a party challenges the allegations supporting subject-matter jurisdiction, the court has wide discretion to allow affidavits, other

documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside the pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment. Accordingly, the court may consider matters outside the pleadings, such as testimony and affidavits, to resolve a factual challenge to subject matter jurisdiction, without converting the motion to dismiss to one for summary judgment. *See Garcia*, 104 F.3d at 1261.

### 2.    Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). The Supreme Court recently overruled the longstanding rule announced in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007). Under *Twombly*, a court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *Sonnier v. State Farm Mut. Auto. Ins. Co.*, No. 07-30098, 2007 WL 4260892, at *1 (5th Cir. Dec. 6, 2007) (quoting *Twombly*, 127 S. Ct. at 1974); *see also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). "[A] plaintiff is obligated to provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bradley v. Phillips Petroleum Co.*, No. H-05-3912, 2007 WL 4443876, at *2 (S.D. Tex. Dec. 18, 2007) (quoting *Twombly*, 127 S. Ct. at 1964–65). "To survive a Rule 12(b)(6) motion

20

to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1964–65); *Sonnier*, 2007 WL 4260892, at *1 (quoting *Twombly*, 127 S.Ct. at 1965). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 127 S. Ct. at 1966) (quotations omitted). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *See Twombly*, 127 S. Ct. at 1967-70.

### B.    Summary Judgment Under Rule 56

KBR moves for summary judgment that it is entitled to a declaration that the vehicle-reimbursement claims under S0040 are not arbitrable and an injunction prohibiting Altanmia from arbitrating those claims. KBR also moves for summary judgment that Altanmia has no right to recover on those claims and that KBR is entitled to dismissal of Altanmia's counterclaims for failing to pay those claims and for failing to engage in alternative dispute resolution.

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "'An issue is material if its resolution could affect the outcome of the action.'"  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).  "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics*

22

*Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted).  "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'"  *Little*, 37 F.3d at 1075 (internal citations omitted).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## III.    The Summary Judgment Evidence

The relevant summary judgment evidence in the record includes KBR's May 7, 2003 RIO written request for proposal;[4] a May 15, 2003 KBR Memorandum for Record;[5] the "Short Form Subcontract" for Subcontract S0040, the General Conditions, Special Conditions, Backcharge Procedures, and Affidavit for Subcontractor form for Subcontract S0040;[6] the eleven change orders under Subcontract S0040;[7] Altanmia's June 2003 Incident

---

[4]  (Docket Entry No. 61, Ex. B at 8).

[5]  (*Id.* at 1).

[6]  (*Id.*, Ex. A).

[7]  (*Id.*, Exs. A-1 to A-11).

23

Report & Claim Forms;[8] the July 29, 2003 e-mail from David Gallaher to Jay Modad;[9] the December 6, 2004 letter from David Brenner to Jay Modad;[10] the November 23, 2005 letter from David Brenner to Harvey Shackley;[11] the February 19, 2005 Affidavit for Subcontractor for Subcontract S0040;[12] the March 3, 2005 faxed letter from Jay Modad to KBR about exclusions to the Affidavits and Close-out Documentation;[13] Altanmia's Claim Forms for vehicle reimbursement under Subcontract S0040;[14] a transcript of the Deposition of Mark E. Lowes;[15] and Altanmia's Stipulation Regarding Arbitrability of Vehicle Reimbursement Claims under Subcontract S0040.[16] KBR submitted the affidavits of Michael K. Morrow,[17] Mark E. Lowes,[18] and its counsel Kerry M. McMahon.[19] Altanmia submitted the affidavit

---

[8] (Docket Entry No. 75, Ex. C).

[9] (Docket Entry No. 68, Ex. 2B, Deposition of Mark E. Lowes, Ex. 4).

[10] (*Id.*, Ex. 2B, Deposition of Mark E. Lowes, Ex. 11).

[11] (Id., Ex. 2B, Deposition of Mark E. Lowes, Ex. 12).

[12] (*Id.*, Ex. 3, Affidavit of David W. Waddell, Ex. A).

[13] (*Id.*).

[14] (Docket Entry No. 61, Ex. G).

[15] (Docket Entry No. 68, Ex. 2).

[16] (Docket Entry No. 61, Ex. H).

[17] (*Id.*, Ex. I).

[18] (*Id.*, Ex. J).

[19] (*Id.*, Ex. K).

of its counsel, David W. Waddell.[20]

## IV.  The Motions Relating to Altanmia's Right to Assert Subcontract S0040 Claims in Arbitration

KBR moved for summary judgment on its claim for a permanent injunction prohibiting Altanmia from asserting its Subcontract S0040 vehicle-reimbursement claims in the Arbitration of claims under Subcontracts S0138 and S0164.  In the alternative, KBR moved for summary judgment on its claim for a declaratory judgment that the parties did not agree to arbitrate claims under Subcontract S0040 and that Altanmia could not assert these claims in the Arbitration of claims arising from Subcontracts S0138 and S0164.  Altanmia opposed other parts of KBR's motion for summary judgment but did not respond to these requests for relief.  Altanmia did move to dismiss KBR's request for a temporary restraining order prohibiting the assertion of Subcontract S0040 claims in the Arbitration of claims under the other two Subcontracts.

The Arbitration of claims under Subcontracts S0138 and S00164 was scheduled to begin on July 14, 2008 in The Hague.  In its most recent filing in this case, Altanmia stated on August 26, 2008 that "the parties' arbitration proceeding is largely concluded."  (Docket Entry No. 89).  KBR has not presented or identified evidence in the record that Altanmia failed to comply with the January 14, 2008 preliminary injunction by asserting claims under Subcontract S0040 in the Arbitration of claims arising under Subcontracts S0138 and S0164.  KBR's motion for summary judgment on its application for a permanent injunction or on its

---

[20]  (Docket Entry No. 68, Ex. 3).

claim for a declaratory judgment that Altanmia cannot arbitrate its vehicle-reimbursement claims under Subcontract S0040 is denied as moot.  KBR's application for a TRO to prevent Altanmia from asserting its vehicle-reimbursement claims under Subcontract S0040, and Altanmia's motion to dismiss that claim, are also denied as moot.

## V.   The Motions Relating to Whether KBR Must Reimburse Altanmia for Vehicle Damages or Losses Arising Under Subcontract S0040

### A.   The Timeliness of Altanmia's Counterclaim

KBR moves for dismissal or summary judgment on Altanmia's counterclaim for reimbursement for the vehicle damages and losses sustained in performing Subcontract S0040.  As a threshold matter, KBR asserts that Altanmia's counterclaim is barred because it was filed after the deadlines set by Docket Entry No. 39, which states, *inter alia*, that "Altanmia must file any counterclaim by 2/15/2008."  Altanmia's counterclaim was filed on July 2, 2008.  KBR asserts that Docket Entry No. 39 is a scheduling order under Rule 16 of the Federal Rules of Civil Procedure.   KBR claims that Altanmia delayed filing its counterclaim until after its attempts to force KBR to arbitrate the claims under Subcontract S0040 failed.  KBR contends that Altanmia disregarded its obligations under Rule 16 by not seeking leave of court to file the counterclaim after the deadline imposed by Docket Entry No. 39.  KBR cites *The Forest Group, Inc. v. Bon Tool Co.*, 2008 WL 2464272, at *2 (S.D. Tex. 2008), in which the court rejected a party's attempt to file a counterclaim after the filing deadline.  The court denied leave to file because "Rule 16(b) provides that a scheduling order 'shall not be modified except upon a showing of good cause and by leave of district court,'"

26

and the party had "failed to establish good cause for its request to amend to add . . . a new counterclaim almost two years after the deadline for amendments." *Id.* at *1. KBR also cites *S&W Enter., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 537 (5th Cir. 2003), in which the court affirmed the district court's denial of leave to amend when the motion was untimely and the proposed amendment would prejudice the opposing party or unnecessarily delay the trial.

Altanmia responds that Docket Entry No. 39 is not a Rule 16 scheduling order because it did not include deadlines to add parties, amend pleadings, complete discovery, and file motions. Altanmia contends that Docket Entry No. 39 set February 15, 2008 as the deadline by which Altanmia had to file a counterclaim to KBR's original complaint but did not set a deadline for filing a counterclaim to KBR's amended complaint. Altanmia argues that it did not have to seek leave under Rule 16 before filing its July 2, 2008 answer and counterclaim to KBR's Amended Complaint, which was not filed until May 22, 2008. Altanmia argues that it did not have to seek leave to amend under Rule 15 because the July 2, 2008 counterclaim was not an amended pleading but an original answer and counterclaim to KBR's amended complaint.

Altanmia's failure to file its counterclaim earlier or to seek leave to file do not require its dismissal, as KBR seeks. Docket Entry No. 39 states: "Minute entry for pretrial conference held before Judge Lee H. Rosenthal on 12/21/2007. The parties presented arguments on the defendant's motion for an evidentiary hearing. The motion for an evidentiary hearing was denied, as stated on the record. Altanmia must submit a proposed

preliminary injunction order by 1/7/2008.   Altanmia must file any counterclaim by 2/15/2008." This docket entry does not include most of the elements of a Rule 16 scheduling order.   *See* Fed. R. Civ. P. 16(b)(3)(A).   There are no dates for the completion of discovery or the beginning of trial, and no deadlines for filing motions or amending pleadings have been set.   The Fifth Circuit has made it clear that the good-cause standard to modify a scheduling order under Rule 16(b) applies only "after a scheduling order deadline has expired."   *S&W Enterpr.*, 315 F.3d at 536.   The February 2008 deadline set in Docket Entry No. 39 was to file a counterclaim to the original complaint.   KBR filed its amended complaint in May 2008.   Altanmia did not file its counterclaim until after KBR had filed its amended complaint and the counterclaim and answer were not subject to Rule 15. Altanmia's counterclaim was not filed after a Rule 16 scheduling order deadline expired.

KBR cites *The Forest Group* and *S&W Enterprises*, but these cases are distinguishable.   They involved attempts to file counterclaims long after clear and long-established scheduling-order deadlines, and shortly before trial.   Extending the deadlines and permitting the counterclaims would have prejudiced the opposing party and delayed the trial date.   In this case, by contrast, there are no clear or long-established deadlines that would have to be extended to permit Altanmia's counterclaim; there is no imminent trial date; and KBR would suffer no prejudice because, as KBR concedes, the counterclaim is but the "reverse mirror image" of KBR's own claims.

KBR's motion to dismiss or for summary judgment on Altanmia's counterclaim on the ground that it was filed after a court-imposed deadline is denied.

### B.   The Risk of Loss for Vehicle Losses and Damages

KBR moves for summary judgment on its claim for a declaratory judgment that it is not obligated to compensate Altanmia for vehicle damage and losses.[21]  KBR also moved to dismiss Altanmia's counterclaim asserting a right to reimbursement or, in the alternative, seeks a summary judgment that Altanmia has no such right.  KBR asserts that it is entitled to summary judgment because the plain language of Subcontract S0040 shows that it is not obligated to compensate Altanmia for equipment losses arising from Subcontract S0040. KBR relies on the General Conditions of Subcontract S0040, which state that Altanmia "shall bear, without right of reimbursement, the full risk of loss or damage to the Sublet Work and all labor, materials, plant equipment, supplies, and other things."  (Docket Entry No. 61, Ex. A, General Conditions § 6.1.2).

### 1.   Altanmia's Challenge to the Summary Judgment Motion and Evidence

As a threshold matter, Altanmia asserts that "[b]ecause it is unclear whether KBR is seeking dismissal of or summary judgment on Altanmia's counterclaims, Altanmia is responding to KBR's motion solely as a motion to dismiss under Rule 12(b)(6).  If the Court is inclined to treat KBR's Motion as a motion for summary judgment under Rule 56(c), Altanmia requests that it be given notice and an opportunity to respond under the applicable summary judgment standards."  (Docket Entry No. 88, at 2).  Altanmia responded on the

---

[21]   KBR asserts that there is a justiciable controversy about the meaning and interpretation of Subcontract S0040's terms.  In its answer to KBR's Original Complaint, Altanmia denied that it bore the risk of loss for or damage to the equipment used to complete Subcontract S0040.  (Docket Entry No. 32).  In its counterclaims filed in response to KBR's Amended Complaint, Altanmia sought reimbursement for vehicle damage and loss under Subcontract S0040.  (Docket Entry No. 81).

merits to KBR's motion for summary judgment that Altanmia has no right to recover on its vehicle-reimbursement claims arising under Subcontract S0040.  That claim is a "mirror image" of Altanmia's counterclaim for payment for the vehicle-reimbursement claims. Altanmia acknowledges that "KBR's Motion does not address the allegations stated in Altanmia's counterclaim, [but] attempts to reargue its own motion for summary judgment." (Docket Entry No. 88, at 1).

Rule 56(c) states: "The motion must be served at least 10 days before the day set for the hearing.  An opposing party may serve opposing affidavits before the hearing day.  The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The Fifth Circuit has stated that "it is not necessary that the district court give ten days' notice after it decides to treat a Rule 12(b)(6) motion as one for summary judgment, but rather after the parties receive notice that the court could properly treat such a motion as one for summary judgment. . . ." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990) (quoting *Clark*, 798 F.2d at 746). The proper question is whether the nonmovant was on notice that the "the district court could treat the motion as one for summary judgment, not [whether] the court would in fact do so." *Id.* (citing *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 (5th Cir. 1988)).

Altanmia received notice that this court could treat KBR's motion as one for summary judgment on July 25, 2008, the day KBR filed its motion.  KBR styled its motion as "Motion To Dismiss [Altanmia's] Counterclaim, Or, In The Alternative, Motion For Summary

Judgment on Altanmia's Counterclaim." (Docket Entry No. 86). KBR attached several exhibits, including Subcontract S0040, the eleven change orders under Subcontract S0040, and the November 23, 2005 Brenner letter. (*Id.*, Exs. A, B, E). A nonmovant receives notice that a Rule 12(b)(6) motion may be treated as one for summary judgment when the moving party frames its motion as seeking summary judgment in the alternative and attaches exhibits to the motion. *Tri-Gen Inc. v. Int'l Union of Operating Engineers*, 433 F.3d 1024, 1029 (7th Cir. 2006); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (holding that no formal notice of conversion by the district court is required in cases when it is apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion, for example, when the motion is captioned in the alternative as a motion for summary judgment and exhibits are attached to the motion. Rule 12(b) does not impose on the district court "an obligation to notify parties of the obvious."); *Hilfirty v. Shipman*, 91 F.3d 573 (3d Cir. 1996) (when a motion to dismiss sought summary judgment in the alternative, the plaintiff was on notice that the court could rule on the motion as one for summary judgment) (disapproved of on other grounds by *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782 (3d Cir. 2000)); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1053 (2d Cir. 1995); *Madewell v. Downs*, 68 F.3d 1030, 1048 (8th Cir. 1995); *Morrow v. City of Glendale*, 19 F.3d 1440, 1994 WL 87206 (9th Cir. 1994) (unpublished table decision); *Maruho Co., Ltd. v. Miles, Inc.*, 13 F.3d 6, 8 (1st Cir. 1993); 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 198 (3d ed. 2004).

Altanmia responded to KBR's summary judgment evidence on the merits and

presented its own summary judgment evidence. The arguments as to Altanmia's right to recover on its vehicle-reimbursement claims under Subcontract S0040 are properly addressed under the Rule 56 summary judgment standard.

Altanmia contends that KBR's motion for summary judgment on its declaratory judgment claim should be denied because it is not supported by competent summary judgment evidence. KBR submitted as Exhibit A to its motion documents identified as Subcontract S0040. Altanmia asserts that KBR has not presented a "complete, true, and correct copy" of this Subcontract because the affidavits submitted to establish the predicate for admissibility state that Exhibit A is "all of the documents that make up Subcontract S0040." (Docket Entry No. 61, Ex. I, Affidavit of Michael K. Morrow, Senior Contracts Manager at KBR). Altanmia argues that Exhibit A is not properly authenticated because the Morrow affidavit does not also state that the documents in Exhibit A are "accurate" copies of the contract. Altanmia also asserts that Morrow's affidavit testimony that Exhibit A is "all of the documents that make up Subcontract S0040" is not the same as a statement that the documents are a "complete" copy of the Subcontract. Altanmia asserts that a "complete" copy of Subcontract S0040 would include any oral modifications or supplements to the written Subcontract.[22]

---

[22] Altanmia also claims that the Morrow affidavit should be excluded under Rule 37(c)(1) because KBR did not include Morrow as an individual with knowledge likely to be helpful to KBR in its Rule 26 disclosures. According to Altanmia, the failure to disclose Morrow will be unfairly prejudicial. In support, Altanmia cites *Edmonds v. Beneficial Mississippi, Inc.*, 212 Fed. Appx. 334, 338 (5th Cir. 2007) and *Antoine-Tubbs v. Local 513, Air Transp. Div., Transport Workers of Am.*, 190 F.3d 537, 1999 WL 642665, at *2 (5th Cir. July 19, 1999) (unpublished disposition), in which the courts held that exclusion could be an appropriate sanction for a party's failure to disclose a document or witness before the discovery cut-off date.

Altanmia's argument that KBR did not authenticate Exhibit A as an accurate and complete copy of Subcontract S0040 is not persuasive.  KBR also submitted an affidavit by Mark E. Lowes, which Altanmia did not discuss.  Lowes identified the documents in Exhibit A, stated that they are KBR business records, and stated that they are "true and correct copies of records from KBRI that have been maintained in KBRI's files and produced through the course of discovery in [this] lawsuit."  (Docket Entry No. 61, Ex. J).  The affidavits KBR submitted provide a sufficient predicate to authenticate Exhibit A and make it competent summary judgment evidence.

The declaratory judgment KBR seeks – that it is not obligated to compensate Altanmia for vehicle losses and damages arising under Subcontract S0040 – is based on the General Conditions Document, which is part of Exhibit A and which Altanmia concedes is part of Subcontract S0040 as executed by the parties.  Altanmia argues that Exhibit A is not a complete copy of Subcontract S0040 because Exhibit A does not include or account for an alleged subsequent oral modification to the written Subcontract.  Altanmia does not dispute

---

Altanmia's reliance on *Edmonds* and *Antoine-Tubbs* is misplaced.  In these cases, the courts excluded evidence introduced after discovery ended because the proponent had failed to identify that evidence in initial disclosures or in discovery.  Altanmia has known or should have known of the contents of the Morrow affidavit for months.  In the Arbitration of claims under Subcontracts S0138 and S0164, KBR produced a memorandum prepared by Morrow that includes the same facts as the Morrow affidavit attached to KBR's motion for summary judgment in this case.  KBR's failure to disclose Morrow in its initial disclosures is not a basis for the sanction of exclusion because his identity and testimony was timely provided to Altanmia.  *See Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (holding that the defendant's failure to provide names of trial witnesses was not sanctionable because there was "no reason to believe defendant acted in bad faith" and the plaintiff knew the witnesses' names and scope of testimony well before trial); *Pratt v. Pharmnet, Inc.*, 2006 WL 2943296, at *2 (N.D. Miss. Oct. 13, 2006) (finding no harm in the defendant's failure to disclose an exhibit because the plaintiff knew or should have known of exhibit and its contents several months before trial).

that Exhibit A includes all the written documents that make up Subcontract S0040 as drafted and executed by the parties.  Altanmia's argument that the written Subcontract was orally modified is not an argument that the summary judgment evidence of the written Subcontract is incompetent.  Altanmia's argument instead goes to the merits of its claim that the Subcontract was orally modified after it was drafted and executed.

Altanmia's challenges to KBR's summary judgment motion and evidence fail.

### 2.    *Altanmia's Argument on the Merits*

Altanmia argues that the Subcontract S0040 terms placing the risk of equipment damage and loss on the subcontractor and requiring all contract modifications to be in writing are not controlling.  Altanmia relies on Texas case law recognizing that "a written contract not required by law to be in writing, may be modified by a subsequent oral agreement even though it provides it can be modified only by a written agreement," *Robbins v. Warren*, 782 S.W.2d 509, 512 (Tex. App.–Houston [1st Dist.] 1989).  Altanmia argues that in the summer of 2003, KBR agreed to reimburse Altanmia for vehicle losses and damage sustained in performing Subcontract S0040, orally modifying the Subcontract's General Conditions to shift the risk of loss from Altanmia to KBR.

Altanmia points to several documents that it contends show an oral agreement for KBR to reimburse Altanmia for vehicle losses and damage arising from performing Subcontract S0040.  These documents include: the June 2003 Altanmia Incident Report and

Claim Forms signed by Gallaher;[23] the July 29, 2003 Gallaher e-mail to Altanmia acknowledging receipt of "a number of claims besides the original four that Al-Tanmia submitted to us for resolution which are outstanding";[24] the December 6, 2004 Brenner letter to Altanmia acknowledging receipt of Altanmia's vehicle claims, with an attached claim form created by KBR for Altanmia;[25] Altanmia's March 3, 2005 faxed letter excluding its vehicle-reimbursement claims from the close-out documentation for Subcontract S0040;[26] and the November 23, 2005 letter from David Brenner to Harvey Shackley "conditionally" accepting Altanmia's 53 vehicle claims under Subcontract S0040 for resolution by KBR.[27] Altanmia asserts that these documents show that the parties entered into an agreement under which KBR would reimburse Altanmia for vehicle claims arising under Subcontract S0040. At a minimum, Altanmia contends, these documents create a genuine issue of disputed fact material to determining whether the parties orally modified Subcontract S0040 to shift the risk of vehicle losses and damage to KBR.  Altanmia argues that KBR would not have acknowledged the claims, requested further documentation, created a specific form for Altanmia's vehicle loss or damage claims, and conditionally accepted the claims unless there was a reimbursement agreement between the parties.  Altanmia argues that KBR's failure to

---

[23]  (Docket Entry No. 75, Ex. C).

[24]   (Docket Entry No. 68, Ex. 2B, Deposition of Mark E. Lowes, Ex. 4)

[25]  (*Id.*, Ex. 2B, Deposition of Mark E. Lowes, Ex. 11).

[26]  (*Id.*, Ex. 3, Affidavit of David W. Waddell, Ex. A).

[27]  (*Id.*, Ex. 2B, Deposition of Mark E. Lowes, Ex. 12).

object when Altanmia expressly excluded its Subcontract S0040 vehicle-reimbursement claims from the scope of the release in the close-out documentation further evidences an oral reimbursement agreement.  Altanmia argues that KBR has reversed course on honoring its reimbursement agreement "presumably because [KBR] recognizes it may be able to find a favorable provision somewhere in the hundreds of pages of fine-print forms KBR now says it presented to Altanmia in May 2003, before asking Altanmia to agree to those forms in a matter of hours."  (Docket Entry No. 85, at 7).

Altanmia's argument that KBR cannot rely on the written risk-of-loss provision because it was in "hundreds of pages of fine-print forms" presented shortly before acceptance of the contract was required is unavailing.  KBR enclosed the General Conditions Document containing the risk-of-loss provision with the request for proposal sent to Altanmia on May 7, 2003.  The request for proposal stated that the terms in the enclosed documents would be the exact terms of the subcontract and encouraged bidders to read carefully.  Both parties to a commercial contract between sophisticated enterprises who deal at arms-length have a duty to read the contract carefully and are presumed to understand it.  *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998).

KBR contends that Altanmia's "subsequent oral modification argument" fails because the evidence does not establish or give rise to a fact issue as to the elements of a valid contract modification.  KBR points to the absence of an affidavit or deposition testimony by an Altanmia representative stating that: (1) there was a reimbursement agreement or oral modification to the risk of loss provision of Subcontract S0040; (2) when the alleged

36

agreement or modification was made; (3) who was involved in making the alleged agreement or modification; (4) the terms of the alleged agreement or modification; or (5) the consideration for the agreement or modification.  (Docket Entry No. 72, at 5-6).  KBR argues that the documents Altanmia relies on show only that Altanmia reserved its right to assert vehicle- reimbursement claims under Subcontract S0040 against KBR, that KBR understood that Altanmia would assert those claims, and that KBR would receive and examine Altanmia's documentation to determine whether the claims were meritorious.  KBR contends that Altanmia's reservation of a right to assert vehicle-reimbursement claims and KBR's statements of willingness to consider them through KBR's customary claims-resolution process does not establish that, or give rise to a fact issue as to whether, the parties orally modified the risk-of-loss provision of Subcontract S0040.  KBR also points to Niakaros's deposition testimony that the parties never reached an oral agreement on reimbursing Altanmia's vehicle-reimbursement claims under Subcontract S0040 by modifying the General Conditions to shift the risk of damaged or lost vehicles from Altanmia to KBR.

A valid contract modification must be supported by consideration separate from the consideration for the initial contract.  *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 314 (Tex.App.– Houston [14th Dist.] 2003, pet. denied).  Consideration may consist of a benefit to one party or a detriment to the other party.  *Id.* at 315.  A valid contract modification also requires the same degree of mutuality and meeting of the minds as was present for the original contract.  *Mid Plains Reeves, Inc. v. Farmland Indus., Inc.*, 768 S.W.2d 318, 321 (Tex.App.– El Paso 1989, writ denied); *Mandril v. Kasishke*, 620 S.W.2d

238, 244 (Tex.Civ.App.– Amarillo 1981, writ ref'd n.r.e.).  One party alone cannot modify a contract after it has been executed; all parties to the contract must assent to the modification.  *Mandril*, 620 S.W.2d at 244.

Altanmia has not presented or identified evidence in the summary judgment record that the alleged oral modification of Subcontract S0040 was supported by new and distinct consideration.  There is no evidence in the record of consideration for a modification to Subcontract S0040 to shift the risk of vehicle loss and damage to KBR rather than Altanmia, as expressly stated in the written contract.  The evidence as to the negotiations preceding the execution of the written Subcontract S0040 shows that the parties agreed to pay Altanmia a higher monthly truck rental fee specifically to take into account the fact that Altanmia bore the risk of equipment loss and damage.  The record shows no postexecution consideration for a shift of that risk from Altanmia to KBR, as Altanmia asserts.  Because there was no consideration to support a modification to the risk-of-loss provision in the General Conditions of Subcontract S0040, KBR is entitled to judgment as a matter of law.  *See Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 909-10 (6th Cir. 2006) (affirming grant of summary judgment because alleged oral modification was not supported by consideration); *Toltest, Inc. v. Nelson-Delk*, 2008 WL 696614, at *6 (N.D. Ohio Mar. 13, 2008) (granting summary judgment because the written contract terms were unambiguous and the defendant failed to present evidence that the alleged oral modification was supported by new and distinct consideration); *Wagner Enterprises, Inc. v. John Deere Shared Services, Inc.*, 397 F.Supp.2d 1097, 1107-08 (N.D. Iowa 2005) (granting summary judgment because there was

no consideration to support an alleged oral modification of written contract).

The fact that Altanmia continued to perform Subcontract S0040 cannot as a matter of law provide consideration for the alleged oral contract modification. A contracting party does not provide consideration for an alleged oral modification merely by promising to do what that party is already bound to do by the original contract terms. *See Hovas v. O'Brien*, 654 S.W.2d 801, 803 (Tex. App.– Houston [14th Dist.] 1983, writ ref'd n.r.e.).

KBR's motion for summary judgment on its claim that it is not required to compensate Altanmia for its vehicle losses and damage sustained in performing Subcontract S0040 is granted. KBR's motion for summary judgment dismissing Altanmia's counterclaims for breach of a contractual obligation to pay for vehicle losses and damage and for quantum meruit is granted.[28]

---

[28] KBR argues that Altanmia's claims under Subcontract S0040 are time-barred because this suit was filed more than four years after Altanmia lost vehicles in performing Subcontract S0040. Altanmia contends that KBR relies on the wrong "trigger date" because the limitations period did not begin on the date of loss, but on the date KBR breached the verbal reimbursement agreement. Because KBR is entitled to a declaratory judgment that it is not obligated to reimburse Altanmia for vehicle losses or damage under Subcontract S0040, KBR's request for a declaratory judgment that Altanmia's vehicle-reimbursement claims are time-barred is denied as moot. Altanmia's motion to dismiss KBR's limitations claims is denied as moot.

### VI.    The Motions Relating to Whether Altanmia Breached Subcontract S0040's Indemnity Provision

KBR moves for summary judgment on its claim that Altanmia breached the indemnity provision of Subcontract S0040 by filing the May 2007 suit alleging that KBR was liable for the vehicle-reimbursement claims under that Subcontract, by attempting to arbitrate those claims, and by counterclaiming against KBR in this case.  KBR bases its breach of contract claim on the following provision in the General Conditions to Subcontract S0040:

> Subcontractor agrees to defend, indemnify and hold harmless General Contractor and Owner from and against any claim, demand, cause of action, injury, loss, cost, damage, or liability of whatever kind or nature (including, without limitation, court costs and reasonable attorney's fees) from injury . . . to any property arising from or in connection with the Sublet Work.

(Docket Entry No. 61, Ex. A, § 5.1).  KBR argues that the 53 vehicle-reimbursement claims Altanmia submitted are third-party claims because the trucks and tankers were not owned by Altanmia.  KBR contends that Altanmia breached its contractual duty to indemnify and protect KBR from "any loss associated with damage to any third party property arising out of Altanmia's performance" under Subcontract S0040.  (Docket Entry No. 59, KBR's Amended Complaint).  KBR argues that Altanmia's breach caused KBR to incur costs and attorneys' fees.

Altanmia responds that no third parties asserted claims against KBR in the Arbitration or this suit and that no indemnity obligation was triggered.  Altanmia moves to dismiss KBR's breach of contract claim, contending that KBR fails to state a claim upon which relief can be granted because there were no third-party claims asserted against KBR.  Altanmia

asserts that Subcontract S0040's indemnity provision does not apply in the absence of a claim brought by a third party.  Altannia cites *MG Building Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 63-64 (Tex. App. – San Antonio 2005, pet. denied), which states that "[a]n indemnity provision does not apply to claims between the parties to the agreement, but obligates the indemnitor to protect the indemnitee against claims brought by third parties." *See also Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. App. – Houston [14th Dist.] 1992, no pet.).  Altannia contends that ownership of the vehicles is immaterial because no third party has made a claim against KBR.

In its summary judgment motion, KBR argues that the indemnity provision in Subcontract S0040 is broad, applying to any claim for losses associated with to equipment or property used in performing Subcontract S0040.  KBR claims that Altanmia's indemnity obligation arose regardless of whether Altanmia or a third party was asserting claims against KBR.

"A contract for indemnity is read as any other contract."  *Safeco Ins. Co. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App. – Dallas 1992, writ denied).  In construing a contract, courts give the language its plain grammatical meaning unless it would defeat the intention of the parties.  *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).  Indemnity agreements are strictly construed in favor of the indemnitor.  *Safeco Ins. Co.*, 829 S.W.2d at 281.  This rule prohibits the extension, by construction or implication, of the indemnitor's obligations beyond the precise terms of the agreement.  *Hudson v. Hinton*, 435 S.W.2d 211, 214 (Tex. Civ. App.– Dallas 1968, no writ).  Strictly construing indemnity agreements is a

41

rule of substantive law that applies only after the parties' intent has been ascertained through ordinary rules of construction. *Safeco Ins. Co.*, 829 S.W.2d at 278.

An indemnity agreement is a promise by the indemnitor to safeguard or hold the indemnitee harmless against existing or future loss or liability. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). An indemnity provision generally does not apply to claims between the parties to the agreement but obligates the indemnitor to protect the indemnitee against claims brought by third parties. *MG Bldg. Materials*, 179 S.W.3d at 63. Although indemnity clauses generally apply to claims brought by third parties, they can be written to require the parties to "indemnify each other against claims they later assert against each other." *Ganske v. Spence*, 129 S.W.3d 701, 708 (Tex. App.–Waco 2004, no pet.).

In *Ganske*, the indemnity provision stated: "Spence hereby indemnifies and holds [Ganske] harmless and agrees to defend [Ganske] against any and all costs, expenses, or liabilities that may occur as a result of the claims against [Ganske] by other persons." *Id.* The court cited the general rule that indemnity clauses do not apply to claims between the parties to an agreement and held that the indemnity provision did not apply to claims between Ganske and Spence because it stated that it applied to claims "by other persons." *Id.* The indemnity provision could have been, but was not, written to allow the parties to indemnify each other against claims each asserted against the other. By contrast, in *Radiant Systems, Inc. v. Am. Scheduling Inc.*, 2006 WL 2583266, at *3 (N.D.Tex. Sep. 7, 2006), the court rejected Radiant's argument that the indemnity provision only applied to claims brought by

third parties because the plain language of the indemnity agreement demonstrated that it also applied to suits between the parties to the agreement.  The provision required Radiant to be liable to ASI for any losses resulting from "the breach or falsity of any covenant or agreement made by [Radiant] in this Agreement." *Id.*  The indemnity provision's clear terms applied to claims between the Radiant and ASI and allowed ASI to recover attorneys' fees and costs expended in enforcing the contract.  *Id.*

The indemnity provision in Subcontract S0040 does not expressly provide for indemnification of claims asserted between the parties to the agreement.  The term "any claim" describes the types of claims that are covered by the indemnity obligation but does not address whether those asserting covered claims include the contracting parties.  *See Sequa Corp. v. Gelmin*, 851 F.Supp. 106, 110 (S.D.N.Y. 1994) (holding that agreement requiring indemnification for "any and all" claims "of any kind and nature" did not provide for indemnification of claims asserted between the parties to that agreement).  The plain language of Subcontract S0040 does not show that the parties intended to require Altanmia to indemnify KBR for claims that Altanmia asserted against KBR as well as for claims that third parties might assert against KBR.  KBR cannot recover costs and attorneys' fees based on the indemnity provision in Subcontract S0040.  *See MRO Southwest, Inc. v. Target Corp.*, 2007 WL 4403912, at *3 (Tex. App. – San Antonio Dec. 19, 2007 ) (defendant could not recover attorney's fees incurred in defending the suit based on indemnity provision because the provision did not apply to claims between the parties to the agreement.)

KBR also argues that even if the indemnity provision only applies to third-party claims, Altanmia has breached its duty to indemnify because the vehicle-damage claims asserted by Altanmia are for vehicles owned by third parties.  But KBR has not shown that the indemnity obligation is triggered by claims submitted by Altanmia or shown that Altanmia asserted the claims on behalf of others rather than to recover losses it sustained in performing Subcontract S0040.  Because no third party has asserted a claim against KBR, Altanmia's indemnity obligation has not been triggered.  Altanmia's motion to dismiss KBR's breach of contract claim is granted.  KBR's motion for summary judgment that Altanmia breached the indemnification obligation in Subcontract S0040 is denied.[29]

## VII.   The Motions Relating to Altanmia's Counterclaims for Promissory Estoppel and Negligent Misrepresentation

Altanmia asserts the right to recover on its vehicle-reimbursement claims based on promissory estoppel and negligent misrepresentation.  KBR moves for summary judgment dismissing those claims.  KBR argues that Altanmia's claim fails as a matter of law because there is no evidence of one element of the claim, a "promise."  KBR asserts that the letter on which Altanmia's promissory estoppel theory is based – the November 23, 2005 letter from Brenner, counsel for KBR's Claims Group – shows that no promise was made.  In that letter, Brenner stated that KBR "conditionally accepted" Altanmia's claims for resolution.  KBR

---

[29] Altanmia also moves to dismiss KBR's breach of contract claim under Rule 12(b)(1), asserting that this court lacks subject-matter jurisdiction because whether a third party will assert claims against KBR under Subcontract S0040 is speculative and may never occur.  Because KBR's claim is for breach based on Altanmia's own claims rather than any third-party claims, it is dismissed under Rule 12(b)(6).  This court does not address the ripeness argument.

argues that Brenner did not make a promise.  "A promise is a declaration that binds the person who makes it to act or refrain from acting in a specified way; it gives the person to whom it is made the right to expect its performance."  *Traco, Inc. v. Arrow Glass Co.*, 814 S.W.2d 186, 190 (Tex. App.– San Antonio 1991, writ denied).  Conditionally accepting Altanmia's claims for resolution, KBR argues, did not bind KBR or give Altanmia the right to compensation.

KBR also argues that Altanmia cannot prove that it relied on Brenner's 2005 letter, to its detriment.  KBR contends that Altanmia's performance under Subcontract S0040 ended two years before Brenner's letter allegedly promising to pay Altanmia for the vehicle damage and losses sustained in that performance.  KBR also contends that any reliance by Altanmia on a promise to reimburse would be unreasonable in light of Subcontract S0040's clear statement that Altanmia would bear the risk of loss under the contract.

Altanmia asserts that the "promise" that is the basis for its promissory estoppel claim is not Brenner's 2005 letter stating that KBR "conditionally accepted" Altanmia's claims for resolution.  According to Altanmia, this statement evidences KBR's earlier promise to reimburse Altanmia for vehicle losses but is itself not the "promise."  Altanmia contends that it did detrimentally rely on KBR's reimbursement promise, which was allegedly made during the summer of 2003 while Altanmia was performing under Subcontract S0040.  Altanmia claims that it relied on KBR's reimbursement promise by continuing to deliver fuel for KBR

instead of quitting after the initial period of performance because of the vehicle losses and damage it was experiencing.

KBR also argues that the integration clause in Subcontract S0040 forecloses Altanmia's negligent misrepresentation claim.  Subcontract S0040 provided that "the entire agreement between [KBR] and [Altanmia] and all negotiations, proposals, and representations have been integrated and superseded by this Agreement." (Docket Entry No. 61, Ex. A at § 9.6).  According to KBR, any representations made by its representatives during the course of negotiating Subcontract S0040 were superseded as a matter of law. Altanmia contends that the negligent misrepresentation that is the basis for its claim is not foreclosed by the integration clause because it occurred after Subcontract S0040 was executed.  In response to KBR's summary judgment motion, Altanmia asserts that KBR made representations "that it intended to and would make vehicle reimbursement payments, and that such payments were forthcoming.  Those representations may have been made after May 18, 2003." (Docket Entry No. 88, at 25).

Altanmia's counterclaims for promissory estoppel and negligent misrepresentation fail as a matter of law.  The elements of promissory estoppel are (1) a promise, (2) foreseeability by the promissor of reliance on that promise, and (3) substantial detrimental reliance by the promisee.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 288 (5th Cir. 2004) (applying Texas law).  The elements of a negligent misrepresentation claim are (1) a representation made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest, (2) the defendant supplies "false information" for the guidance of others in their

46

business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Promissory estoppel and negligent misrepresentation both require reasonable and justifiable reliance on the promise or misrepresentation. *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex.App.–Houston [14th Dist.] 2006, no pet.). When the parties' written agreement addresses the substance of the oral statement and contains language directly contradicting or refuting the oral statement, Texas courts find reliance on subsequent oral promises unreasonable as a matter of law. *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 856, 858-59 (Tex.App.– Houston [14th Dist.] 2003, pet. denied) (holding that reliance on both pre- and post-contractual oral representations, directly contradicted by the contract's express terms, was not justified as matter of law); *Airborne Freight Corp. v. C.R. Lee Enters., Inc*., 847 S.W.2d 289, 297 (Tex.App.– El Paso 1992, writ denied) (finding that written contract containing ample cautionary language precluded reliance by reasonable businessperson on verbal statements contradicting the written agreement).

Section 6.1.2 of Subcontract S0040's General Conditions states that Altanmia "shall bear, *without right of reimbursement*, the full risk of loss or damage to the Sublet Work and all labor, materials, plant equipment, supplies, and other things." (Docket Entry No. 61, Ex. A at § 6.1.2) (emphasis added). As a matter of law, it was not reasonable or justifiable for Altanmia to rely on KBR's alleged subsequent oral promise or representation to reimburse

for vehicle loss or damage sustained in performing Subcontract S0040.  Such a promise or representation was directly contradicted by the parties' written agreement.  And Subcontract S0040's requirement that all changes or amendments be in writing made it even less reasonable for Altanmia to rely on an alleged oral representation or promise contradicting a written contractual term.[30]  *See Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 908 (Tex.App.– Houston [1st Dist.] 1995, writ denied) (noting that clause requiring that amendments to contract be in writing is additional notice not to rely on oral representations).

KBR's motion for summary judgment on Altanmia's claims for promissory estoppel and negligent misrepresentation is granted.[31]

## VII.   The Motions Relating to Altanmia's Counterclaim that KBR Breached Its Contractual Obligation To Engage in Alternative Dispute Resolution

KBR moved for summary judgment on Altanmia's counterclaim for breach of the ADR provision in Subcontract S0040.  Altanmia asserts that KBR filed this lawsuit without first engaging in a good-faith attempt at alternative dispute resolution.  Altanmia alleges that KBR breached Subcontract S0040's requirement that if a dispute could not be resolved through negotiation, the parties would "attempt in good faith to resolve the dispute under

---

[30]  Section 9.6 of the General Conditions stated that Subcontract S0040 "may be amended only by a document in writing executed with equal formality."  (Docket Entry No.61, Ex. A at § 9.6).

[31]  KBR also argues that Altanmia's promissory estoppel and negligent misrepresentation claims are barred by limitations.  Because this court concludes that Altanmia cannot show a basis for recovering on these counterclaims, the limitations issues are not addressed.

agreed Alternate Dispute Resolution (ADR) procedures."  (Docket Entry No. 61, Ex. A at § 8.2).

Altanmia has waived its right to argue that KBR breached Subcontract S0040 by not engaging in ADR procedures before filing suit.  Waiver operates against a party who "intentionally relinquishes a known right or *engages in intentional conduct inconsistent with claiming that right*."  *Tenneco, Inc. v. Enter. Prod. Co*., 925 S.W.2d 640, 643 (Tex. 1996) (emphasis added).  On May 9, 2007, Altanmia sued KBR in federal court, asserting causes of action for breach of Subcontract S0040 and promissory estoppel.  Altanmia did not attempt to resolve the dispute with KBR under ADR procedures before filing suit.  Altanmia has waived its counterclaim against KBR for breach of the ADR provision in Subcontract S0040.  KBR's motion for summary judgment dismissing this counterclaim is granted.

## VIII.  KBR's Motion for Sanctions

KBR seeks sanctions against Altanmia and its counsel, arguing that the March 18, 2008 Motion to Compel Arbitration was filed in bad faith, to harass and cause delay.  KBR asserts that Altanmia moved to compel arbitration after having made several statements, stipulations, and judicial admissions that it would not include the vehicle-reimbursement claims arising under Subcontract S0040 in the Arbitration of claims arising under Subcontracts S0138 and S0164.  Altanmia responds that sanctions are not warranted because its change in position and decision to move to compel arbitration was based on further study of this court's opinions and applicable Fifth Circuit precedent.  Altanmia requests an award of fees and costs incurred in responding to KBR's motion for sanctions.

49

### A.    The Legal Standard

A district court has broad discretion in determining whether a sanction is warranted and what sanction is appropriate.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990).  Rule 11 generally requires an attorney to conduct a reasonable inquiry into the relevant law and facts before signing pleadings, written motions, or other documents, and it prescribes sanctions for violating these obligations.  FED. R. CIV. P. 11.  Rule 11 "prohibits filings made with 'any improper purpose,' the offering of 'frivolous' arguments, and the assertion of factual allegations without 'evidentiary support' or the 'likely' prospect of such support."  *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005).  Rule 11(c)(2) requires that a party seeking sanctions must serve the Rule 11 motion on the opposing party and may not file the motion with the district court unless the offending filing is not withdrawn or corrected within 21 days after service.  FED. R. CIV. P. 11(c)(2).  KBR complied with this safe-harbor notice requirement.

"Determinations under Rule 11 often involve 'fact-intensive, close calls.'"  *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004 (8th Cir. 2006) (quoting *Cooter & Gell*, 496 U.S. at 404).  To support a frivolousness finding, the fault need not be a subjectively reckless state of mind.  But the offending party "must, at the very least, be culpably careless to commit a violation."  *Young*, 404 F.3d at 39.  The rule "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."  FED. R. CIV. P. 11 Committee Notes (1993 amendments); *see also Tahfs v. Proctor*, 316 F.3d 584,

594 (6th Cir. 2003) ("A good faith belief in the merits of a case is insufficient to avoid sanctions.").

### B.    Analysis

On August 20, 2007, this court held a hearing on KBR's Application for a Temporary Restraining Order.  During that hearing, counsel for Altanmia stated that it did not intend to seek a determination as to any dispute arising under Subcontract S0040 in the Arbitration of disputes arising under the other two Subcontracts with KBR.  (Docket Entry No. 63, Ex. E, at 23:22-24:2).  On August 28, 2007, Altanmia filed an opposition to KBR's Application for a TRO, asserting there was a strong likelihood that the claims arising under Subcontract S0040 were arbitrable.  (Docket Entry No. 13).  After this court granted in part KBR's Application for a Preliminary Injunction, on November 30, 2007, Altanmia filed a motion for an evidentiary hearing and to delay entry of a preliminary injunction.  (Docket Entry No. 31).

At the hearing on December 21, 2007, counsel for Altanmia stated that it had no objection to the entry of a preliminary injunction enjoining it from asserting claims arising under Subcontract S0040 in the Arbitration of the claims arising under the other two Subcontracts.  Counsel also stated that Altanmia believed a permanent injunction could be crafted to which Altanmia would agree.  (Docket Entry No. 63, Ex. F, at 25:21-26:1).  After this hearing, however, counsel for KBR and Altanmia were unable to agree on the language of a preliminary injunction.

On January 3, 2008, Altanmia filed a stipulation stating that "Altanmia will not attempt to arbitrate or obtain a recovery on vehicle reimbursement claims arising under a subcontract identified as Subcontract [S0040]." (Docket Entry No. 40).  KBR filed a motion for entry of a preliminary injunction preventing Altanmia from arbitrating its vehicle reimbursement claims under Subcontract S0040.  (Docket Entry No. 41).  At the hearing on KBR's motion, Altanmia's counsel stated that the stipulation was adequate to protect KBR and that no injunction was needed.  (Docket Entry No. 63, Ex. H, at 11:5-6, 13:5-9).  Counsel also stated that Altanmia was "happy to stipulate that the vehicle claims that are at issue in this litigation are not subject to arbitration."  (*Id.*, at 17:18-21).  Based on the record, this court issued a preliminary injunction on January 14, 2008 enjoining Altanmia "from asserting claims related to Subcontract S0040 in the Arbitration of claims arising under Subcontracts S0138 and S0164."  (Docket Entry No. 50).  At a January 28, 2008 scheduling conference concerning discovery, counsel for Altanmia again stated that it had no intention of arbitrating any claims arising under Subcontract S0040.  (Docket Entry No. 63, Ex. G, at 9:20-24).  Despite these assurances, Altanmia filed its Motion to Compel Arbitration on March 18, 2008.  (Docket Entry No. 60).

KBR contends that reasonable inquiry would have shown Altanmia's counsel that filing a Motion to Compel Arbitration contradicted its prior representations, stipulations, and judicial admissions.  KBR argues that the motion to compel was futile because the legal contentions were not warranted by existing law.  KBR argues that this motion to compel was the third filing in which Altanmia reasserted apparently abandoned and previously

52

unsuccessful arguments that disputes under Subcontract S0040 were subject to arbitration. KBR asks this court to find that Altanmia was not engaging in zealous advocacy but in harassment to cause unnecessary delay and a needless increase in litigation costs. KBR asserts that Altanmia filed the motion in bad faith because the authorities cited by Altanmia, including *McKee v. Home Buyers Warranty Corp.*, 45 F.3d 981, 983 (5th Cir. 1995), are "readily distinguishable" from this case.

KBR cites *Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 610 (8th Cir. 1993), in which the court affirmed Rule 11 sanctions against a party and its counsel on the basis that "[a] reasonable investigation would have shown counsel" that the party was contradicting its own prior factual stipulation to manipulate the judicial process. In *Monterey*, the owner of the plaintiff development company had signed a stipulation in a prior case providing that all junior liens on the property at issue, including a deed of trust, were extinguished. *Id.* at 606-07. After Monterey purchased the property, the assignee of the deed of trust attempted a nonjudicial foreclosure and Monterey surrendered possession of the property. *Id.* at 607. The district court held that the stipulation extinguished all junior liens and that the deed of trust was not a valid basis for foreclosure. *Id.* Monterey voluntarily dismissed that suit. Monterey subsequently sued in state court seeking damages from the title company for its failure to except the deed of trust from coverage. *Id.* at 608. The case was removed to federal court, which ordered it dismissed and imposed sanctions against counsel. Monterey's owner and counsel knew that the purported foreclosure was invalid because of the stipulation, yet still attempted to recover monetary damages based on the deed of trust.

*Id.* at 609-10.  The appellate court noted that Monterey's owner and counsel "contradicted the intent of the stipulation . . . and have attempted to play 'fast and loose with the court.'" *Id.* at 610.  *See also American Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 220 (D.C. Cir. 1991) (affirming imposition of sanctions because a government official acted in bad faith by taking a position contradicting his prior written stipulation).

Altanmia asserts that this court's November 21, 2007 ruling and subsequent entry of a preliminary injunction did not foreclose Altanmia's Motion to Compel Arbitration.  These rulings were not final decisions on the arbitrability issue and the *McKee* case was not before the court when it made those rulings.  The November 21, 2007 memorandum and opinion stated that KBR had shown "a likelihood of success" that Altanmia's claims arising under Subcontract S0040 were not subject to binding mandatory arbitration.  The preliminary injunction order prohibited Altanmia from arbitrating its claims under Subcontract S0040 claims "without notice to and further Order by this Court." (Docket Entry No. 50).  Altanmia contends that these orders did not preclude its right to change litigation positions and move to compel arbitration.  Altanmia argues that its motion to compel arbitration was "invited" by the way this court's November 21, 2007 memorandum and opinion "framed the arbitrability issue presented by Subcontract S0040." (Docket Entry No. 79, Altanmia's Response in Opposition to KBR's Motion for Sanctions).  The memorandum and opinion stated that "the issue is not whether claims under Subcontract S0040 are arbitrable in general, but whether they are subject to binding arbitration." (Docket Entry No. 29).  It also recognized that binding arbitration is among the ADR procedures recommended by the

54

Center for Public Resources, which were incorporated into the dispute resolution provision in Subcontract S0040.   (*Id.*).   Altanmia contends that because the opinion in *McKee* addressed a contract incorporating arbitration procedures that require binding arbitration, it provided a sound basis for asserting that Subcontract S0040 requires binding arbitration.

Altanmia asserts that the reasonableness of its argument is buttressed by the fact that KBR made this same argument in an unrelated earlier federal-court proceeding.   Altanmia pointed out that KBR filed a motion to compel arbitration in that proceeding based on the same language contained in a separate subcontract with a third party.   In that motion, KBR argued that the dispute resolution provision "is sufficient to compel arbitration."   *Storm Reconstruction Servs., Inc. v. Kellogg Brown & Root Servs., Inc.*, No. 1:06CV726-LG-JMR, 2007 WL 3124559 (S.D. Miss. Oct. 24, 2007).[32]   Altanmia contends that based on this court's prior rulings, *McKee*, and KBR's position in *Storm Reconstruction*, Altanmia's Motion to Compel cannot be characterized as having no chance of success under existing precedent.

The record does not support an award of sanctions against Altanmia or its counsel. Altanmia's argument that *McKee* required this court to compel arbitration of the claims arising under Subcontract S0040 was unpersuasive but was not so frivolous so as to merit sanctions under Rule 11.   Although Altanmia could have conserved judicial resources by

---

[32]   As discussed in this court's April 17, 2008 memorandum and opinion, however, the *Storm Reconstruction* court rejected KBR's argument and denied the motion to compel.   The court held, as this court also concluded, that the dispute resolution provision did not clearly indicate the parties' intention to submit disputes to arbitration.   Like this court, the Mississippi federal court noted that the CPR "has set forth procedures and rules for not only arbitrations, but also for other types of ADR, including mediations and mini-trials."   2007 WL 3124559, at *3.

making its arguments based on *McKee* and *Storm Reconstruction* in its opposition to KBR's application for a preliminary injunction, the failure to do so is not sanctionable. *Monterey* is distinguishable because in that case the plaintiff and its counsel knew that they had no basis for the relief they sought after their stipulation. Here, the stipulation Altanmia signed stated that it did not intend to assert claims under Subcontract S0040 in the Arbitration of claims arising under the other two Subcontracts, but did not state that there was no basis to ask the court to compel KBR to submit those claims to arbitration. The record does not support the conclusion that Altanmia was attempting to manipulate the judicial process, to harass KBR, to increase litigation costs unnecessarily, or to delay the litigation. The fact that Altanmia's motion to compel arbitration was unsuccessful does not support sanctions. "Rule 11 does not require that the legal theory expressed in a filing prevail." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993).

KBR's motion for sanctions is denied. Altanmia's motion for costs and fees incurred in responding to the sanctions motion is also denied.

## IX.    Conclusion

KBR is entitled to a declaratory judgment that it is not obligated to compensate Altanmia for vehicle loss or damage arising under Subcontract S0040. KBR is entitled to summary judgment on Altanmia's counterclaims. KBR is not entitled to judgment on its claim that Altanmia breached its contractual indemnity obligation. Altanmia's motion to dismiss this breach of contract claim is granted.

KBR's requests for a permanent injunction, a declaratory judgment that claims arising

under Subcontract S0040 are not arbitrable, a temporary restraining order, and a declaratory judgment that Altanmia's vehicle-reimbursement claims are time-barred are denied as moot. Altanmia's motion to dismiss KBR's application for a temporary restraining order is denied as moot.

KBR's motion for sanctions against Altanmia and its counsel for filing the Motion to Compel Arbitration is denied.

By **December 23, 2008**, the parties are directed to file a statement with the court identifying any remaining issues and proposing a schedule for resolving them or, if no issues remain, to submit a proposed final judgment.

SIGNED on December 3, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

57