IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KELLOGG BROWN & ROOT INTERNATIONAL, INC., | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-07-2684 |
| ALTANMIA COMMERCIAL MARKETING CO. W.L.L., | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This suit arose from a series of contracts between Kellogg Brown & Root International, Inc. ("KBR") and Altanmia Commercial Marketing Co. W.L.L. ("Altanmia") under which Altanmia transported fuel from Kuwait to Iraq. KBR moved for declaratory judgment and Altanmia filed counterclaims relating to Altanmia's claims for reimbursement for vehicles lost and damaged in performing one of those contracts, Subcontract GU67-KJ5-S0040 ("Subcontract S0040"). On December 3, 2008, this court issued a Memorandum and Opinion holding that "KBR is entitled to a declaratory judgment that it is not obligated to compensate Altanmia for vehicle loss or damage arising under Subcontract S0040. KBR is entitled to summary judgment on Altanmia's counterclaims. KBR is not entitled to judgment on its claim that Altanmia breached its contractual indemnity obligation. Altanmia's motion to dismiss this breach of contract claim is granted. . . . KBR's motion for sanctions against Altanmia and its counsel for filing the Motion to Compel Arbitration is denied." (Docket

Entry No. 93, at 56-57).  This court denied the parties' motions for reconsideration on March 2, 2009, (Docket Entry No. 101), and entered final judgment on March 23, 2009.  (Docket Entry No. 104).  The order entering final judgment stated:

> For the reasons stated in this court's December 3, 2008 Memorandum and Opinion, this court enters a declaratory judgment that Kellogg Brown & Root International, Inc. (KBR) is not obligated to compensate Altanmia Commercial Marketing Co., W.L.L. for vehicle loss or damage arising under Subcontract GU67-KJ5-S0040.  The remaining claims, defenses, and counterclaims are dismissed with prejudice.  Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, KBR, as a prevailing party, will submit a bill of costs within fourteen days of this judgment.  Altanmia will submit objections to the bill of costs within the time prescribed by Local Rule 54.2.

(*Id.*).  KBR submitted a bill of costs on March 27, 2009.  (Docket Entry No. 105).  KBR seeks $25,023.22 in costs, itemized as follows: $350.00 for clerk and marshal fees, $968.06 in court reporter fees for necessary transcripts, $55.70 for printing fees, $19,799.86 in fees for "exemplification and copies of papers necessarily obtained for use in the case," and $3,849.60 for "other costs."  (*Id.*).

Altanmia has filed objections and a motion to retax KBR's bill of costs.  (Docket Entry No. 106).  KBR responded, (Docket Entry No. 110), and Altanmia replied, (Docket Entry No. 111).  Altanmia argues that KBR is not entitled to any costs because it is not the prevailing party.  Altanmia argues that even if KBR is considered the prevailing party, it is not entitled to all of the costs submitted in the bill.  Altanmia argues that some of the costs are outside those authorized under 28 U.S.C. § 1920 and that the copying costs are excessive and unnecessary.  KBR argues that it is the prevailing party entitled to fees under § 1920.

KBR points out that Altanmia does not dispute that if KBR is the prevailing party, it is entitled to the clerk and marshal fees, printing fees, and court reporter fees included in the bill of costs. In its response to Altanmia's motion, KBR withdrew a total of $3,849.60 from its bill of costs — for postage ($63.86), delivery service ($42.00), telecopier ($2.64), long distance telephone charges ($56.98), and attorney travel expenses ($3,684.12) — conceding that these costs are not recoverable under § 1920.

The remaining dispute is over the costs KBR seeks under § 1920(4), which permits recovery of expenses "for exemplification and . . . making copies of any materials where the copies are necessarily obtained for use in the case." The parties' contentions are examined below.

## I.     Prevailing Party

Altanmia contends that KBR is not the prevailing party because it brought multiple claims against Altanmia and only prevailed on one of them. Altanmia argues that the declaratory judgment claim on which KBR prevailed "did little (if anything) to change the status quo." (Docket Entry No. 106, at 2). Altanmia argues that, viewing the litigation as a whole, it "prevailed in repelling nearly all of KBR's claims, whereas KBR was successful in only one claim that had little if any impact on the parties' relationship." (*Id.*, at 4).

Altanmia's argument is not persuasive. Determining whether a party has prevailed "requires that the extent of a litigant's success be viewed in light of the entire litigation." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 132 (5th Cir. 1983). "The case must be viewed as a whole to determine who was the 'prevailing party'; a party

3

need not prevail on every issue in order to be entitled to costs." *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). Although this case involved multiple claims and counterclaims, at bottom the litigation was about whether KBR or Altanmia had to pay for the vehicle losses and damage resulting from the performance of Subcontract S0040. Altanmia asserted more than $3,000,000.00 in vehicle loss and damage claims. (Docket Entry No. 78). KBR obtained a declaratory judgment that it was not obligated to pay these claims. This judgment did not merely "maintain the status quo." KBR obtained a judgment that it had no obligation to arbitrate Altanmia's vehicle reimbursement claims under Subcontract S0040 and that it had no obligation to pay those claims. Because KBR prevailed on the declaratory judgment and obtained a judgment that it was not liable for the claims, KBR is the prevailing party in this case.

**II.    Costs**

Rule 54(d)(1) provides, in relevant part, that "[u]nless a federal statute, these rules or a court order provides otherwise, costs — other than attorneys' fees — should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006). The following categories of costs are recoverable:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

>(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
>(5) Docket fees under section 1923 of this title;
>
>(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

A district court may decline to award costs within the statutory categories, but it may not award costs outside those categories. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). If the party against whom costs are taxed does not specifically object, the costs sought are presumed necessary for the case. *Neutrino Development Corp. v. Sonosite, Inc.*, 2007 WL 998636, at *4 (S.D. Tex. Mar. 4, 2007). If there is an objection, the party seeking costs has the burden of supporting its request with evidence documenting the costs incurred, and proof, if applicable, as to whether the challenged amount was necessarily incurred in the case. *Fogleman*, 920 F.2d at 285–86. Section 1920 must be strictly construed. *Mota v. Univ. of Texas Houston Health Science*, 261 F.3d 512, 529 (5th Cir. 2001).

KBR is entitled to recover its costs for clerk and marshal fees, court reporter fees, and printing fees. These costs are specifically enumerated in 28 U.S.C. § 1920 and Altanmia did not object. KBR's bill of costs also included $19,799.86 in fees for "exemplification and copies of papers necessarily obtained for use in the case." (Docket Entry No. 105, at 2). Altanmia objected to the amount as unauthorized and excessive.

KBR asserts that $17,846.02 was for "necessary data extraction and storage costs caused by KBR using a third party vendor." (Docket Entry No. 110, at 5). KBR asserts that after Altanmia served its request for document production on November 4, 2008, KBR had to access electronic storage tapes. According to KBR, "[b]ecause of the volume of data potentially encompassed by Altanmia's requests," it had to send the tapes to a vendor, RenewData, to extract and store information responsive to the discovery requests. (*Id.*). KBR asserts that the data extraction and storage costs fall under § 1920(4) as costs for "exemplification" and "making copies."

The record shows that Altanmia served the document production requests at issue on November 4, 2008. This court entered a Memorandum and Opinion disposing of all outstanding issues in the case on December 3, 2008. KBR no longer had an obligation to respond to Altanmia's discovery requests as of that date.

KBR has submitted eight RenewData invoices. (Docket Entry No. 110, Ex. A). Each invoice states that the billing was for "Extracted Data Storage" or "Extracted Data and/or OM Storage." (*Id.*). There are two invoices for each of the following dates: January 31, 2009; December 31, 2008; November 30, 2008; and October 31, 2008. The invoices from October 2008 are for work done before Altanmia's discovery request and do not represent costs incurred for data extraction and storage to respond to Altanmia's request. The December 2008 and January 2009 invoices postdate this court's Memorandum and Opinion granting summary judgment. Even assuming that these invoices were for data extraction and storage work during the previous month, the January 2009 invoice is for costs incurred after

the summary judgment opinion issued and made the discovery requests moot.

### A. Exemplification and Copies

There is a circuit split on the meaning of "exemplification" in §1920(4). The Seventh Circuit has adopted a broad definition, concluding that exemplification "signifies the act of illustration by example, a connotation broad enough to include a wide variety of exhibits and demonstrative aids," including "maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials." *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000); *see also Schering Corp. v. Amgen, Inc.*, 198 F.R.D. 422, 428 (D. Del. 2001) (holding that, in considering whether the costs of a video exhibit are taxable under § 1920(4), "the standard the court will apply to direct its discretion is whether the video materially aided [the judge's] understanding of the technological issues in the case")). Other circuits, however, use the narrow definition from Black's *Law Dictionary*, "[a]n official transcript of a public record, authenticated as a true copy for use as evidence." *See Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1375 (Fed. Cir. 2006) (quoting Black's *Law Dictionary* 593 (7th ed. 1999)) (interpreting First Circuit law); *Kohus v. Toys R Us, Inc.*, 282 F.3d 1355, 1360–61 (Fed. Cir. 2002) (rejecting the Seventh Circuit's broad definition of § 1920(4) and finding that under Sixth Circuit law, the costs for making an animated video demonstrating the features of the patent at issue, filed as part of a summary judgment motion on noninfringement, was not an exemplification and that the district court had no statutory authority to award costs for making the video); *see also Arcadian Fertilizer, L.P. v. MPW Industrial Services, Inc.*, 249 F.3d 1293, 1296–97 (11th Cir. 2001) ("Because the videotape

exhibits and the computer animation are neither copies of paper nor exemplifications within the meaning of § 1920(4), . . . taxing these costs was error."). It appears that the Fifth Circuit follows the narrow approach. *See Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993) (holding that expenses for enlargements of trial exhibits were "not included in § 1920 and therefore are not recoverable").

The terms "exemplification" and "copying" originated in and were developed in the world of paper. One issue is how to apply these § 1920 terms to the world of electronically stored information. Several courts have confronted similar issues. The Sixth Circuit has held that "electronic scanning and imaging could be interpreted as 'exemplification and copies of papers.'" *BDT Products, Inc. v. Lexmark Intern., Inc.*, 405 F.3d 415, 419–20 (6th Cir.2005) (finding no abuse of discretion in the district court's taxing of copying costs based on electronic scanning and imaging). In *Brown v. McGraw-Hill Cos., Inc.*, 526 F.Supp.2d 950 (N.D. Iowa 2007), the court held that "electronic scanning of documents is the modern-day equivalent of 'exemplification and copies of paper,' and therefore, can be taxed pursuant to § 1920(4)." *Id.* at 959. But federal district courts in Texas have held that the cost of scanning documents for use in electronic format is not recoverable under 28 U.S.C. § 1920 where it is for the convenience of counsel and not "necessary" for use in the case. *See, e.g.*, *Roehrs v. Conesys, Inc.*, 2008 WL 755187, at *3 (N.D. Tex. Mar. 21, 2008) (rejecting argument that scanned digital versions of paper documents were necessary to the case because they were "merely only more convenient for counsel to search and examine"); *Conoco, Inc. v. Energy & Envtl. Intern., L.C.*, 2006 WL 734396, at *2 (S.D. Tex. Mar. 22,

2006) (prohibiting recovery for scanned images); *Harris Corp. v. Sanyo No. Am. Corp.*, 2002 WL 356755, at *3 (N.D. Tex. Mar.4, 2002) (declining to award incidental costs for ASCII disks because searchable deposition testimony was used merely for the convenience of counsel).

The courts addressing the issue have held that costs for data extraction and storage are not recoverable under § 1920(4). In *Fells v. Virginia Dept. of Transp.*, --- F.Supp.2d ----, 2009 WL 866178 (E.D. Va. Mar. 25, 2009), the defendant sought to recover the costs of "electronic records initial processing, Metadata extraction, [and] file conversion." *Id.* at *3. The *Fells* court contrasted the scanning of documents in a case like *BDT Products* to convert "a paper document into an electronic document," from the techniques the defendant used to "create electronically searchable documents." *Id.* The court observed that costs for data extraction and processing are not among those enumerated under § 1920. *Id.* And the court refused to extend exemplification and copying in § 1920(4) to cover "techniques of processing records, extracting data, and converting files, which served to create searchable documents, rather than merely reproduce paper documents in electronic form." *Id.* at *4. The court held that the defendant had failed to meet its burden to show that these costs were allowed under § 1920. *Id.* Similarly, in *Klayman v. Freedom's Watch, Inc.*, 2008 WL 5111293 (S.D. Fla. Dec. 4, 2008), the defendants attempted to recover costs for work performed by an outside consultant to collect electronic documents for discovery. *Id.* at *2. The court observed that "defendants hired experts at a huge hourly cost to search for and retrieve discoverable electronic documents," which, "[i]n a non-electronic document case[,]

. . . would be performed by paralegals and associate attorneys and would not be compensable as costs under 28 U.S.C. § 1920." *Id.* The court held that these costs were not recoverable under the statute. *Id.*; *see also Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643–44 (7th Cir. 1991) (costs incurred "for a computerized litigation support system are not taxable costs under section 1920"); *Chevron U.S.A. Inc. v. Aker Maritime, Inc.*, 2008 WL 594650, at *16 (E.D. La. Jan. 2, 2008) (holding that party could not recover costs for "imaging documents, transferring documents to and from electronic media, [and] reproducing electronically stored documents on paper"); *Windy City Innovations, LLC v. America Online, Inc.*, 2006 WL 2224057, at *3 (N.D. Ill. July 31, 2006) (disallowing costs claimed by prevailing party for coding services and keyword searching performed in response to opposing party's discovery requests because "[t]he computer document coding systems for which AOL is seeking costs 'perform [ ] the work an attorney, paralegal or law clerk would have to perform in its absence [and thus] expenses for such systems are more properly considered expenses incidental to an award of attorneys' fees, not costs of suit' that are recoverable in a bill of costs").

The steps that KBR had the third-party vendor perform do not appear to be electronic equivalents of exemplification and copying. Rather, these steps appear to be the processing of tapes to locate, retrieve, and store information that might be responsive to a production request. The steps of extracting data from an electronic medium and storing that data for possible use in discovery is more like the work of an attorney or legal assistant in locating and segregating documents that may be responsive to discovery than it is like copying those

10

documents for use in a case. The extraction and storage did not involve certification of public documents or the preparation of demonstrative exhibits. Nor does KBR assert that the extraction and storage involved electronically scanning information to be produced in electronic form. As in *Fells* and *Klayman*, the costs that KBR seeks for RenewData's extraction and storage are not within the "exemplification and copying" category of § 1920.

KBR cites *Neutrino Development Corp.*, 2007 WL 998636, at *4. In that case, the court allowed the prevailing party to recover the costs (other than attorneys' fees for review) associated with extracting privileged metadata from electronically stored information produced in discovery. The court observed that "the electronic data was produced in lieu of costly paper production. Defendant was seeking to save costs by not printing out hundreds of documents, which required redaction of privileged information." *Id.* The court held that the cost of preparing the electronically stored information for production, including the costs of electronically removing privileged metadata, was within the costs recoverable under § 1920(3) for "fees and disbursements for printing." *Id.* In the present case, KBR did not assert that it incurred the $17,846.02 in data extraction and storage costs for the purpose of redacting privileged information or metadata and did not assert that the costs fell within § 1920(3). *Neutrino* does not support awarding costs for KBR's data extraction and storage costs under § 1920(4).

### B. "Necessarily Obtained for Use In the Case"

Altanmia asserts, and there is no contrary indication, that KBR did not produce the data extracted by RenewData. The dates of the invoices in relation to the date the production

request issued and the date of this court's summary judgment order show that much of the extraction and storage was performed either before the discovery request issued or after this court's ruling ended the discovery process. The record does not show that KBR's costs for data extraction and storage were for exemplification and copies "necessarily obtained for use in the case."

KBR asserts that the rest of its copying costs – $1,827.10[1] – was for "necessary copy costs incurred by KBR's counsel and outside vendors." (Docket Entry No. 110, at 6). The in-house copy costs were $1,519.30, based on a total of 15,193 copies at $0.10 per copy. The outside-vendor copying charges were $307.80, based on a total of 2,052 pages at $0.15 per copy. KBR has included the sworn affidavit of its counsel that these costs were reasonable and necessary for the litigation. (Docket Entry No. 110, Ex. A). Altanmia argues that the in-house copying was not necessary for this litigation because the 15,193 copies KBR included in its bill of costs were not produced in discovery or submitted in the motions filed with this court.

Some courts have held that § 1920(4) only covers the costs of copying documents and exhibits received as evidence, prepared for use in presenting evidence, or obtained for service on the other parties in the litigation and the court, and does not cover the costs of copying documents copied for production in discovery. *See*, *e.g.*, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 763–64 (8th Cir. 2006); *Little Rock Cardiology Clinic, P.A. v. Baptist Health*,

---

[1] KBR asserts that this figure is $1,953.84. But using the figures KBR provided for in-house and outside vendor copying charges, $1519.30 + $307.80 = $1827.10.

12

2009 WL 763556, at *3–4 (E.D. Ark. Mar. 19, 2009) (costs for reproducing electronically stored information, scanning, and CD-ROM production incurred in responding to discovery requests were not covered under § 1920 because such costs for production in discovery are not taxable); *Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 408 (D. Kan. 2000) ("As a general rule, prevailing parties are not entitled to recover costs incurred in responding to discovery; because the producing party possesses the original documents, such papers are not 'obtained' [by the producing party] for purposes of § 1920(4)."). Other courts are less restrictive, allowing costs for copies of documents or electronically stored information for production in discovery. *See, e.g.*, *E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000) ("'Copies attributable to discovery' are a category of copies recoverable under § 1920(4).") (citation omitted); *Crandall v. City of Denver*, 594 F.Supp.2d 1245, 1256 (D. Colo. 2009) ("[T]here appears to be ample authority for the proposition that a prevailing party's expenses in copying discovery material demanded by the losing side are properly taxed as costs.") (collecting cases); *Waggoner v. Trans Union, LLC*, 2003 WL 22838718 (N.D. Tex. Nov. 24, 2003) (costs for photocopying documents produced in discovery were "reasonably necessary for [defendant's] defense" and thus "necessarily obtained for use in litigation"); *Schering Corp.*, 198 F.R.D. at 428 ("Copying documents in response to a discovery request is, by its nature, necessary for use in preparing Schering's case . . . ."); *see also Fogleman*, 920 F.2d at 285–86 ("Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court."). Even assuming that §1920(4) covers the costs of copying information for production in discovery, KBR has not shown that

13

it should recover the costs of the data extraction or storage or the in-house copying. Copies "obtained simply for the convenience of counsel" are not recoverable under § 1920(4). *Fogleman*, 920 F.2d at 286. The record shows that the information KBR obtained from the vendor's data extraction and storage was not produced to Altanmia and that the work was at least in part done before Altanmia's production request or after this court's summary judgment ruling. And KBR has not sufficiently explained or itemized the in-house copies to allow this court to determine whether they were necessarily obtained for use in this litigation. Although it is not necessary for "a prevailing party to identify every xerox copy made for use in the course of legal proceedings, [a court will] require some demonstration that reproduction costs necessarily result from that litigation." *Fogleman*, 920 F.2d at 286; *see also Denner v. Tex. Dept. of Criminal Justice*, Civ. A. No. SA-05-CA-184-XR, 2007 WL 294191, at *7 (W.D. Tex. Jan. 29, 2007). KBR provided the copy rate and number of documents copied, as well as a spreadsheet showing the number of copies made on each date. There is no further description of what was copied or why. The spreadsheet merely states "Expense" and "Reproduction" on each and every line. (Docket Entry No. 110, Ex. C). Although an item-by-item description is not required, some information of the types or categories of documents copied and the reason for the copies must be furnished. *See Montgomery Cty. v. Microvote Corp.*, 2004 WL 1087196, at *7–8 (E.D. Pa. May 13, 2004) ("The reports show the dates of the copies and the rate that was charged, however, the columns reserved for the description of what documents were copied are blank. Without providing a description of the documents that were copied, the Court is unable to evaluate

14

the necessity of the costs."); *Pion v. Liberty Dairy Co.*, 922 F.Supp. 48, 53 (W.D. Mich. 1996) ("[T]he court will not endeavor to calculate the number of pages or documents for which costs are available; this task should have been performed by the defendant."). KBR's counsel submitted an affidavit stating that the in-house copies were "necessary for this litigation," but this conclusory assertion alone is not enough. *See Montgomery Cty.*, 2004 WL 1087196, at *8 ("As for the affidavit of counsel averring that the costs sought were actually incurred, its conclusory statement that copies were "reasonably necessary throughout the litigation" does not assist the Court in determining the nature, and the necessity, of the documents that were copied."). Without more explanation, this court cannot determine whether the copies were necessarily obtained for use in this case. KBR has failed to establish that the in-house copies claimed as costs were necessarily obtained for use in the present litigation. *See Denner*, 2007 WL 294191 at *7 ("The Court "require[s] some demonstration that reproduction costs necessarily result from [the] litigation" beyond the mere conclusory recitation of the standard on the bill of costs."); *Pion*, 922 F.Supp. at 53 (disallowing copying costs where "[d]efendant's submissions . . . did not identify the number, substance, or purpose of the copies made in a manner sufficient to demonstrate that the expenses were reasonable or necessary"); *see also Fogleman*, 920 F.2d at 286 (stating that although the unsuccessful party "should be taxed for the cost of producing relevant documents and exhibits for use in the case, [the party] should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines"). The $1,519.30 for in-house copying costs is not

allowed.

With respect to the outside-vendor copying charges, Altanmia does not dispute that KBR produced the 2,052 documents copied by the outside vendor and concedes that these copies meet the § 1920(4) standard. Altanmia noted that KBR produced roughly 1,000 pages to this court and 1,000 pages to Altanmia's counsel in August 2007. KBR is entitled to recover $307.80 in copying costs necessarily incurred in this case.

### III.   Conclusion

KBR is the prevailing party in this litigation. Under Rule 54(d)(1) and 28 U.S.C. § 1920, KBR is entitled to recover $350.00 for clerk and marshal fees, $968.06 in court reporter fees for necessary transcripts, $55.70 for printing fees, and $307.80 in outside vendor copying costs, for a total of $1,681.56.

SIGNED on May 26, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge